Filed 5/15/14  Griffin v. Quest Diagnostics Clinical Laboratories CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| GIL GRIFFIN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>QUEST DIAGNOSTICS CLINICAL LABORATORIES, INC.,<br><br>    Defendant and Respondent. | D062727<br><br><br>(Super. Ct. No. 37-2011-00090876-CU-OE-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Mirch Law Firm, Kevin J. Mirch, Marie C. Mirch, and Erin E. Hanson for Plaintiff and Appellant.

Baker & McKenzie, Colin H. Murray and Daniel G. Valles for Defendant and Respondent.

Gil Griffin sued his employer, Quest Diagnostics Clinical Laboratories, Inc. (Quest), alleging common law and Fair Employment and Housing Act (FEHA) causes of

action. After sustaining a demurrer on several claims, the court granted Quest's summary judgment motion on the remaining claims. Griffin challenges the court's summary judgment ruling on three causes of action: FEHA racial discrimination, FEHA retaliation, and negligence. He also challenges the court's evidentiary rulings. We reject Griffin's contentions and affirm the judgment.

FACTUAL AND PROCEDURAL SUMMARY[1]

We summarize the admissible evidence in the light most favorable to Griffin, the party opposing the summary judgment. (See *Garcia v. W&W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1041 (*Garcia*).) Additional facts will be set forth in the legal discussion of the appellate issues.

Quest hired Griffin in May 2005 as a route service representative. His duties included transporting laboratory materials to and from various locations. Shortly after he was hired, Griffin's coworker, Aime Longoria, told him she dates only " 'black guys.' " Griffin is African-American; Longoria is Hispanic. There is no evidence Griffin complained about this remark to a manager or supervisor.

About two years later, Longoria became Griffin's supervisor. While in that role, Longoria told Griffin that he could not wear black shorts and that Quest's uniform policy

---

[1] In violation of appellate rules, Griffin asserts numerous facts in his appellate briefs that are unsupported by evidence in the summary judgment record. We disregard each of these factual assertions, and do not further discuss them.

In setting forth the facts, both parties cite to the statement of undisputed facts and/or the responsive statement. These citations are unhelpful and create unnecessary work for the reviewing court. Unless a fact is undisputed, parties should provide a supporting citation to specific evidence in the summary judgment record, and should not cite to the assertions contained in their statutory statements of undisputed/disputed facts.

2

requires that route drivers wear khaki-colored pants. Although this was an accurate statement of Quest's clothing policy, Griffin has seen numerous employees violating the policy at various times.

In August 2008, Griffin received corrective counseling and a final written warning after a female coworker complained to management that Griffin had inappropriately touched and kissed her and this made her feel uncomfortable. During the investigation of this complaint, Griffin admitted he had recently hugged numerous female coworkers, but said the hugs reflected his "thank-you" for wedding gifts these women had given him. Quest had previously warned Griffin to refrain from hugging other employees.

Griffin received raises each year he was employed by Quest, except in 2009. Griffin was not given a raise in 2009 because he received an improvement-needed grade on a performance review. This grade was based on Quest's finding that Griffin had misrepresented that he was at a hospital pickup at a particular time. Griffin disagreed that he had misrepresented his pickup time, and believed Quest's action reflected that he had "a different level of scrutinization than other employees."

The next year, in about September or October 2010, Griffin took a break at the end of the day in the employee break room. Supervisor Longoria told Griffin he could not use this room to take his break and must take his break during his shift. Griffin was later given a written warning regarding this matter. These oral and written admonishments accurately reflected company policy that route service drivers must take their breaks during their shifts while they are on the road, and not at company offices. Quest imposes this break policy to comply with California wage and hour laws.

3

Less than six months later, in February 2011, Griffin filed claims with the Department of Fair Housing and Employment (DFEH) against three of his supervisors (Longoria, Anita Smith, and Dennis Hogle). On the form complaints, Griffin alleged he was subjected to harassment, discrimination, and retaliation. On the portion of the forms asking for the basis for the alleged unlawful acts, Griffin checked the spaces identified as "sex" and "retaliation for engaging in protected activity" and left blank the space for "race/color."

Shortly after, the DFEH issued Right to Sue notices.

Within several months, Griffin filed a superior court complaint against Quest and various individual defendants. As amended, the complaint alleged eight causes of action. Five of the claims alleged FEHA violations: retaliation, failure to accommodate a disability, failure to prevent discrimination and retaliation, sexual harassment, and racial discrimination. (Gov. Code,[2] § 12940, subds. (a), (h), (j), (k).) Two of the causes of action alleged common law claims: negligence and conversion. Griffin's remaining cause of action alleged Quest failed to properly compensate him for overtime work. (Lab. Code, § 1194.)

The court sustained Quest's demurrer to several of the statutory claims: denial of accommodation, failure to prevent discrimination and retaliation, and sexual harassment. The court found the claims were barred by the applicable limitations period and the allegations were insufficient to support the asserted causes of action. The court also

---

[2] All further unspecified statutory references are to the Government Code.

4

granted a motion to strike the claims against the individual defendants. Griffin does not appeal from these rulings.

Quest then successfully moved for summary judgment on the remaining claims. Griffin appeals from the court's ruling only on three causes of action: (1) racial discrimination in violation of the FEHA; (2) retaliation in violation of the FEHA; and (3) negligence. We discuss the relevant portions of the summary judgment record when examining each of Griffin's appellate contentions.

## DISCUSSION

### I. *Summary Judgment Review Standards*

A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

The issues on a motion for summary judgment are framed by the pleadings. (*Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 607.) A moving defendant has the initial burden to show one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to the claim. (*Garcia, supra*, 186 Cal.App.4th at p. 1041.) If the defendant meets this burden, the burden shifts to the plaintiff to show the existence of a triable issue. (*Ibid.*) The plaintiff may not rely upon

5

the pleading allegations but instead must set forth *specific facts* based on *admissible evidence* showing a triable issue of material fact on the cause of action. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477; *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 635.)

We review a summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) We consider all of the evidence and inferences reasonably drawn from the evidence, and view the evidence in the light most favorable to the opposing party. (*Aguilar, supra*, 25 Cal.4th at p. 843; see *O'Riordan v. Federal Kemper Life Assurance Co.* (2005) 36 Cal.4th 281, 284.) "Because a summary judgment denies the adversary party a trial, [the motion] should be granted with caution." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305.)

A summary judgment is presumed to be correct, and the appellant bears the burden of affirmatively demonstrating error. (See *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 252.) It is the appellant's responsibility to point out the claimed triable issues by specific citation to the factual record and supporting legal authority. This court is not " 'obligate[d] . . . to cull the record for the benefit of the appellant.' " (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.) When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and appropriate legal and factual citations, we treat the point as forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785; *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)

6

Under these principles, we examine the court's summary judgment ruling on each of the three challenged causes of action. We consider Griffin's allegations in his complaint to frame each cause of action, and then examine the applicable law and the parties' evidence to determine whether the court properly granted summary judgment.

## II. *Racial Discrimination Cause of Action*

### A. *Background*

In his racial discrimination cause of action, Griffin alleged his race was a "factor in Defendants' actions . . . against him." He specifically alleged Quest discriminates against African-Americans in hiring, promotion, and pay decisions. He claimed he suffered damages in the form of "severe mental anguish and emotional distress" and a loss of earnings "due to Quest's overtime calculations."

Quest moved for summary judgment on this claim on various grounds, including that Griffin failed to exhaust his administrative remedies, there is no evidence of discrimination under disparate treatment or disparate impact theories, and Griffin did not suffer an adverse employment action based on the claimed racial discrimination. The trial court agreed with each of these arguments and granted summary judgment on this claim. Griffin challenges this conclusion on appeal. We determine the court properly granted the motion because the claim is barred by Griffin's failure to exhaust administrative remedies and Griffin failed to produce admissible evidence showing he was discriminated against based on his race.

7

B. *Exhaustion of Administrative Remedies*

Section 12960 provides an employee bringing a FEHA claim must exhaust an administrative remedy by filing an administrative complaint with the DFEH within one year after the alleged unlawful action occurred. (§ 12960, subd. (d); see *Acuna v. San Diego Gas & Electric Co.* (2013) 217 Cal.App.4th 1402, 1412; *Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1613 (*Okoli*).) "To exhaust his or her administrative remedies as to a particular act made unlawful by the [FEHA], the claimant must specify that act in the administrative complaint, even if the [administrative] complaint does specify other cognizable wrongful acts." (*Martin v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1724 (*Martin*).)

In this case, Griffin filed three form complaints with the DFEH on February 15, 2011. The complaints were identical, except each named a different supervisor. On each form, Griffin checked boxes alleging the supervisor had engaged in various prohibited acts (including harassment and failure to prevent discrimination) *because of* "sex" and *because of* "retaliation . . . ," but he did not check the boxes alleging that he had been harassed or discriminated against based on "race/color" or "national origin/ancestry." He attached a lengthy narrative summary in which he did not mention any form of racial discrimination, and instead discussed his belief that Quest was treating him unfairly and was retaliating against him for complaining about overtime pay issues and other unspecified unlawful employment practices.

Griffin acknowledges he did not identify racial discrimination on the DFEH complaint forms, and thus he did not satisfy the rule requiring exhaustion of

8

administrative remedies for his racial discrimination claim.  But he seeks to come within an exception permitting recovery on a claim that was " '*like or reasonably related to*' " the allegations in the administrative complaint.  (*Okoli, supra*, 36 Cal.App.4th at p. 1614.) Under this exception, the exhaustion requirement is satisfied if the two claims are sufficiently related such that the administrative investigation would "necessarily uncover" the later claim in an investigation of the charged incident.  (*Id.* at p. 1615; see *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 266-269; *Baker v. Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1065.)  However, this exception applies only if this relationship requirement is satisfied.  " '[W]hen the difference between the charge and the complaint is a matter of adding an entirely new basis for the alleged discrimination,' " the court has no jurisdiction to consider the newly alleged claim. (*Okoli, supra*, 36 Cal.App.4th at p. 1615.)

Griffin's racial discrimination claim does not fall within the " 'like or reasonably related' " exception.  (*Okoli, supra*, 36 Cal.App.4th at p. 1614, italics omitted.)  There is no basis for concluding that his retaliation and sexual harassment claims were connected to his current racial discrimination claims.  In the administrative complaint, Griffin did not identify his race and did not state or suggest that he believed the company treated him differently because of his race.  Instead, the narrative description focuses on his belief that he has been treated unfairly because he has spoken out on various subjects, none having anything to do with his race.

On this record, the exception is inapplicable.  (See *Okoli, supra*, 36 Cal.App.4th at p. 1615 [" 'complaint alleging race discrimination is neither "like or related to" nor likely

9

to be discovered in a "reasonable" investigation of a charge of sex discrimination' "];
*Martin, supra*, 29 Cal.App.4th at pp. 1725, 1727 [exhaustion doctrine precluded gender discrimination, harassment, and retaliation claims when DFEH claim alleged only age discrimination]; *Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1123 [plaintiff could not pursue FEHA claim for age harassment because DFEH complaint included only gender discrimination allegations]; see also *Rodriguez v. Airborne Express* (9th Cir. 2001) 265 F.3d 890, 897; *Stallcop v. Kaiser Foundations Hospitals* (9th Cir. 1987) 820 F.2d 1044, 1050-1051.)

Griffin's reliance on *Sandhu v. Lockheed Missiles & Space Co.* (1994) 26 Cal.App.4th 846 (*Sandhu*) is misplaced. In *Sandhu*, the plaintiff alleged in his administrative complaint that he was treated differently from other, " 'non-Asian' " employees, and checked only "race" as the cause of discrimination. (*Id.* at pp. 849, 850.) In his superior court complaint, the plaintiff alleged racial discrimination and described himself as an " 'East Indian.' " (*Id.* at p. 849.) However, the trial court granted a demurrer based on evidence that a person from India is " 'by definition . . . [a] Caucasian' " and thus cannot recover for race discrimination. (*Id.* at pp. 850, 856.) In his amended complaint, the plaintiff alleged he was " 'an East Indian male whose national origin is Punjab, India . . .' " and alleged discrimination based on this national origin. (*Id.* at p. 850.) The court then granted a demurrer because the plaintiff identified racial discrimination and not "national origin" discrimination in his administrative complaint. (*Ibid.*)

10

The *Sandhu* court reversed. After a lengthy discussion on the analytical difficulties in differentiating between race and national origin, the court concluded: "Discriminators . . . may indeed be 'poor anthropologists' . . . ; any scientific definition of race has little to do with the realities of racial discrimination. Sandhu alleged both in his administrative charge and in his complaints that he was treated differently from other, 'non-Asian' Lockheed employees. Like other plaintiffs whose ancestry, descent and national origin are all intimately related, . . . Sandhu may not and need not be aware of the precise basis of Lockheed's disparate treatment of him: whether it was his accent, his skin color, his ancestry or his nationality. . . . Sandhu's allegation that he was subject to a discriminatory animus based on his membership in a group which is perceived as distinct when measured against other Lockheed employees, and which is not based on his birthplace alone, is sufficient to make out a cognizable claim for racial discrimination under FEHA." (*Sandhu, supra*, 26 Cal.App.4th at pp. 857-858.)

This case is different. Sexual harassment and retaliation for complaining about the employer's acts unrelated to race are not "intimately related" to claims of *racial discrimination.* Griffin charged specific conduct in his administrative complaint involving sexual harassment and retaliation (and elaborated on *this* conduct in his narrative description) and there is no evidence that he merely mistakenly checked the wrong box. He now seeks to litigate other, dissimilar claims that he omitted from his administrative complaint. This does not come within the exception to the general rule. (See *Martin, supra*, 29 Cal.App.4th at p. 1724.)

11

We also find unhelpful Griffin's focus on the trial court's statement in its written order that Quest's due process rights were violated by Griffin's failure to exhaust his administrative remedies. We review the summary judgment de novo and thus we examine the court's ruling not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.) The court's ruling was correct.

C. *Griffin Proffered No Evidence To Support Racial Discrimination Claim*

Although we need not reach the issue, we additionally find the court properly granted summary judgment on the racial discrimination claim because Quest met its summary judgment burden to show Griffin lacks evidence showing he was discriminated against on the basis of race, and Griffin did not meet his burden to proffer facts supporting this claim.

In analyzing a FEHA claim, we apply the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792. (See *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); *Guz v. Bechtel Nat., Inc*. (2000) 24 Cal.4th 317, 354 (*Guz*).) Under this test, (1) the plaintiff must set forth sufficient evidence to establish a prima facie case of discrimination or retaliation; (2) the employer must then articulate a legitimate, nondiscriminatory reason for the adverse employment action; and (3) the burden then shifts back to the employee to show the challenged action in fact resulted from discrimination or retaliation. (See *Yanowitz, supra*, 36 Cal.4th at p. 1042; *Guz, supra*, 24 Cal.4th at pp. 354-356.)

An employer is entitled to summary judgment under the *McDonnell Douglas* test if the employer "presents admissible evidence either that one or more of plaintiff's prima

12

facie elements is lacking, or that the adverse employment action was based on legitimate, [nonretaliatory or nondiscriminatory] factors . . . unless the plaintiff produces admissible evidence which raises a triable issue of fact material to the defendant's showing." (*Caldwell v. Paramount Unified School Dist.* (1995) 41 Cal.App.4th 189, 203.)

On appeal, Griffin does not challenge that Quest satisfied its initial burden to show proper nondiscriminatory reasons for its actions. However, he argues he met his burden to show racial discrimination based on his assertions that Quest enforced various company rules against him and not against Caucasian employees, including: (1) the rule prohibiting route service employees from using the break room to take their breaks; (2) the requirement that route driver employees wear khaki-colored pants; and (3) the rules against hugging and/or touching other employees. These arguments are unavailing.

First, with respect to the break room incident, Griffin testified that he was told by supervisor Longoria that he could not use the break room to take a break at the end of his shift. However, the evidence established (and Griffin conceded) that Longoria's statement was consistent with Quest's general policy that route couriers were required to take breaks during the course of their daily routes and not at the end of their shifts, and this policy was implemented to comply with California wage and hour laws. Griffin nonetheless argues that Longoria's statement to him was "racist" based on his deposition testimony that he "had a 1967 lunch counter flashback when [he] heard [Longoria say] that" and "All I could assume was either it was [based] on my sex or on my race." He also testified at his deposition that he has "seen" other couriers (of unspecified races) who "take a break before they clock out."

13

This evidence is insufficient to show Quest discriminated against Griffin based on his race. Griffin's deposition testimony does not support an inference that Quest enforced its break policies only against African-American employees or that the application of the policy against Griffin was motivated by Griffin's race. Griffin's unsupported assumptions that he believed Longoria's statement was racially motivated are not sufficient to create a triable issue of fact. "[A] party 'cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact. [Citation.]' [Citation.]" (*Dollinger DeAnza Associates v. Chicago Title Ins. Co.* (2011) 199 Cal.App.4th 1132, 1144-1145.)

Second, Griffin's discussion of Quest's uniform policy does not show racial discrimination. Griffin argues the uniform policy was discriminatory because it was applied only to him and not to Caucasian employees. In support, Griffin relies on photographs of two or three individuals wearing black pants or khaki or black shorts. In his declaration, Griffin stated that these photographs were taken in 2012 (after the lawsuit was filed) and "depict his fellow Quest employees violating Quest uniform policies." He further stated: "Upon information and belief, these individuals were not disciplined in any manner. Uniform violations occur everyday."

This evidence does not reflect that Quest discriminated against Griffin based on his race. There is no evidence these employees were in the same job classification as Griffin, that they were not disciplined for the uniform violations, or that the relevant supervisors were aware of the uniform violations. Griffin's assertions that these individuals were not cautioned about the uniform policy were made "upon information

14

and belief," and thus were insufficient to raise a triable issue of fact. (See *Lopez v. University Partners* (1997) 54 Cal.App.4th 1117, 1124.) Additionally, as discussed below, the fact that Griffin was once told by his supervisor to comply with the uniform policy does not show an "adverse employment action" and thus cannot support a racial discrimination claim under the FEHA.

Third, Quest's enforcement of its sexual harassment policy does not support Griffin's claim that he was discriminated against based on his race. The undisputed evidence shows Quest's sexual harassment policy prohibits offensive conduct, including unwanted touching. It was further undisputed that a female employee made a written complaint that Griffin put his arm around her and "plant[ed] a kiss next to [her] lips," and that she "felt very uncomfortable!" During the investigation of this claim, Griffin was temporarily suspended with pay. He thereafter admitted to "at least 17 physical interactions (hugs and/or kisses) with co-workers within the last two weeks." Griffin was counseled to refrain from this behavior and a final written warning was placed in his personnel file. The evidence also showed that he had engaged in hugging incidents in the past, and had been warned not to repeat this behavior.

In his appellate brief, Griffin argues that the discipline reflected racial discrimination because "Other non-African American employees are not reprimanded when they hug other employees . . . ." In support, Griffin refers to his deposition testimony in which he described an incident in which "two Hispanic males walk[ed] up to Anita Smith [Longoria's supervisor] and g[a]ve her a hug and a kiss on the cheek." He also cites his testimony in which he said he has observed other employees violating the

15

sexual harassment policy "on a daily basis" and he believes these employees "are not being written up . . . ." (Underscoring omitted.) He said he felt he was "being held to a higher level of standards than my co-workers are." (Underscoring omitted.)

Griffin's testimony was insufficient to create an inference that Quest's action was motivated by Griffin's race. Quest provided legitimate grounds for its disciplinary action: a coemployee's written complaint documenting Griffin's violation of the company's sexual harassment policy and Griffin's admissions that he frequently hugged and kissed female employees. Even assuming it is true that other employees frequently touched each other, there was no evidence that this conduct reflected unwanted conduct or that any employee had complained about the conduct. Thus, Griffin was not in the same position as the other workers with respect to the enforcement of the sexual harassment policy. Moreover, there was no evidence that these other employees were not counseled or did not receive warnings or discipline for violating the no-touching policy. Griffin's subjective belief that he was not treated equally regarding the sexual harassment policy was unsupported by the evidentiary record. Speculation does not constitute sufficient evidence to overcome a motion for summary judgment on a racial discrimination cause of action. (See *Horn v. Cushman & Wakefield Western* (1999) 72 Cal.App.4th 798, 807-808, 817; *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1118.)

Griffin's additional claimed examples of racial discrimination—not being allowed to "go in the front entrance of buildings," not provided "stretching breaks," and not provided legally required meal and rest breaks—were either not raised below as a basis for racial discrimination and/or are not supported by the evidentiary record. Further,

16

Griffin's reliance on a hearsay remark attributed to Longoria in which she referred to " 'my people' " in a conversation with another employee about an unrelated matter is insufficient to show any form of discrimination. On the record before us, there is no reasonable basis for concluding that remark had anything to do with Griffin or his race.

The court properly granted summary judgment on the racial discrimination claim.

### III. *Retaliation Cause of Action*

#### A. *Background*

In his retaliation cause of action, Griffin alleged Quest retaliated against him after he complained about Longoria's "unlawful sexual harassment" during Quest's investigation of his own sexual harassment conduct. He also alleged that Quest retaliated against him for complaining about overtime law violations, the failure to accommodate his physical disability, and not allowing him to use the break room.

In moving for summary judgment on the retaliation claim, Quest argued there was no evidence that it retaliated against Griffin after he engaged in the claimed protected conduct, nor was there any evidence that Griffin suffered an adverse employment action. In support, Quest presented evidence that the discipline imposed on Griffin for his sexual harassment conduct predated his alleged complaints about Longoria's conduct. Quest also presented evidence showing Griffin was not terminated, demoted, or given less responsibilities or benefits during the relevant times. According to Quest's evidence, the only tangible adverse action was a denial of a pay raise in 2009, but Quest produced facts showing this denial was based on Griffin's documented act of misrepresenting a hospital pickup time.

17

In response, Griffin did not discuss or identify the protected conduct upon which he was relying for his retaliation claim. Instead, he focused on the adverse employment action issue, and asserted that he was entitled to recover for various adverse actions, including his difficult work schedule, discipline for his sexual harassment of other employees, and enforcement of the dress code against him.

In granting summary judgment on this claim, the court found the record did not support that Griffin had engaged in protected activity or that he had suffered an adverse employment action from any such activity.

B. *Summary of Applicable Law*

The FEHA makes it unlawful for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under [the FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [the FEHA]." (§ 12940, subd. (h).) To prove retaliation under the FEHA, an employee "must prove he engaged in protected activity; the employer took an adverse employment action against him; the protected activity was a motivating reason for the adverse action; and the employers' conduct caused harm to the plaintiff." (*Lewis v. City of Benecia* (2014) 224 Cal.App.4th 1519, 1533.) We apply the *McDonnell Douglas* burden shifting analysis in evaluating Quest's summary judgment motion on the retaliation claim. (See *Yanowitz, supra*, 36 Cal.4th at p. 1042.)

An employment action is adverse if it "materially affects the terms and conditions of employment" under the totality of the circumstances. (*Yanowitz, supra*, 36 Cal.4th at p. 1036.) In determining whether an action is sufficiently material, the court should

18

consider "plaintiff's allegations collectively under a totality-of-the-circumstances approach." (*Id.* at p. 1052, fn. 11.) "Minor or relatively trivial adverse actions" do not suffice (*id.* at p. 1054), but "the collective impact of a series of retaliatory acts may constitute sufficient adverse employment action even if some of the acts individually would not." (*Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 423.)

## C. *Analysis*

In contending the court erred in granting summary judgment on the retaliation claim, Griffin does not challenge that Quest presented legitimate nonretaliatory reasons for its actions or cite to any evidence showing he engaged in any protected activity *that triggered a retaliatory action*. Griffin has thus failed to meet his appellate burden to establish error. To recover on a FEHA retaliation claim, the plaintiff must show he engaged in protected activity and a nexus between the protected activity and the adverse employment action. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1258-1259.)

Additionally, Griffin does not direct us to any facts showing he suffered an adverse employment action in retaliation for his protected actions. In his appellate briefs, Griffin suggests various actions that he contends were retaliatory and "adverse," including: (1) discipline for wearing shorts in violation of the company policy; (2) the assignment of a vehicle that "aggravated [Griffin's] hip injury"; and (3) the assignment of a "route that could not be completed in the allotted time without speeding and skipping lunch breaks." However, none of these assertions show a viable FEHA retaliation claim.

19

First, with respect to the uniform issue, Quest presented evidence that Griffin was told to comply with Quest's clothing policy, and Griffin presented no evidence showing this instruction was in retaliation for protected conduct. Further, the only evidence of any discipline imposed was his deposition testimony that his supervisor told him "That's not allowed." This statement does not show a material adverse effect on the terms and conditions of Griffin's employment sufficient to support his FEHA retaliation claim. (See *Yanowitz, supra*, 36 Cal.4th at p. 1036.)

Second, in support of his assertion that Quest assigned him a vehicle that "aggravated" his hip injury, Griffin cites to pages 3-39 of his deposition testimony lodged in opposition to the summary judgment motion. The only relevant portion of this testimony is on page 12 in which Griffin responds to an unspecified question (the question is not part of the deposition excerpt), stating:

> "And Leon was telling me about how bad his vehicle was and how terribly it drove. And I said, 'Well did you ask Aime [Longoria] for a new vehicle?' And at that time our fleet was starting to get replaced. We had Toyota Tacoma pickup trucks, and they were starting to give us Dodge Caravans. And he said he tried to ask her to get another one, but she said that, 'I have to take care of my people first.' And I said, 'Her people?' "

This evidence is insufficient to show Quest's assignment of a vehicle was a retaliatory action for his engaging in protected conduct and/or that it affected the terms and conditions of Griffin's employment.

Third, there is no evidence that Griffin's assignment of a route that allegedly could not be completed in the allotted time was in response to Griffin's engaging in protected activities. In support of this assertion, Griffin cites to his deposition testimony that he

20

"had to drive like a maniac" and skip his break times to satisfy the employer pickup/drop-off requirements. Even assuming this testimony was true, the evidence is insufficient to show Quest gave him that route in retaliation for his engaging in an unspecified protected activity.

The court properly granted summary judgment on Griffin's retaliation cause of action.

## IV. *Negligence*

In his negligence claim, Griffin alleged that Quest breached a duty of care by failing to: (1) correctly calculate Griffin's overtime pay as required by law; (2) allow Griffin to use the break room; (3) provide Griffin with a new vehicle after being informed of his medical condition; (4) address sexual harassment directed towards him; and (5) take remedial action against Longoria after Griffin gave Quest a list of his grievances regarding her retaliatory conduct.

The court granted summary judgment on the negligence cause of action on several grounds, including res judicata (as to the overtime pay issue) and the lack of any showing of damages with respect to the remaining claims. In his appellate briefs, Griffin argues the court erred with respect to its ruling on the negligence claim, but does not cite to the record showing facts supporting that (1) Quest breached duties with respect to any of those claims; and (2) Griffin suffered damages from the claimed breach of duties. Absent such supporting facts, Griffin's challenge to the court's ruling on the negligence claim is without merit. Griffin asserts that he suffered emotional distress damages from Quest's negligence. However, he does not support these assertions with citations to the record,

21

nor does he show a nexus between his claimed emotional distress and an alleged breach of duty owed to Griffin.

The court did not err in granting summary judgment on the negligence claim.

V. *Challenges to the Court's Evidentiary Rulings*

Griffin contends the court erred in overruling his objections to nine separate exhibits proffered by Quest in support of its summary judgment motion.

"Evidence submitted for or against a motion for summary judgment must be admissible if being offered at trial." (*Kincaid v. Kincaid* (2011) 197 Cal.App.4th 75, 82.) Although the California Supreme Court has not decided the matter (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535), the majority view is that an appellate court reviews the trial court's summary judgment evidentiary rulings for abuse of discretion. (*Kincaid, supra*, at pp. 82-83.) Additionally, an appellant is required to show that the claimed evidentiary error was prejudicial. (*Carnes v. Superior Court* (2005) 126 Cal.App.4th 688, 694.)

Applying these principles, we have reviewed each of Griffin's objections and determine the court properly overruled the objections. First, Griffin challenged several documents on hearsay grounds, but the court properly overruled those objections because the documents were not offered for their truth, and instead were offered to show Quest's notice of complaints made against Griffin. Additionally, the fact that certain pages may have been missing from some of the proffered documents does not show the documents were inadmissible. There is no evidentiary rule that a document is inadmissible if it is not complete. Further, Griffin's objections on the basis of lack of foundation and/or lack of personal knowledge are not well-founded. On our review of each of these challenged

22

documents, there was a sufficient foundation for the admission of the document and the court had a reasonable ground to overrule the objections. Finally, even assuming there was error and one or more of these documents should have been excluded, there was no miscarriage of justice. Even without this evidence, the undisputed facts showed Griffin did not meet his appellate burden to show the court erred in granting summary judgment.

## DISPOSITION

Judgment affirmed. Appellant to bear respondent's costs on appeal.


HALLER, J.

WE CONCUR:


McCONNELL, P. J.


McINTYRE, J.