[No. E049099. Fourth Dist., Div. Two. June 18, 2010.]

CESAR GARCIA et al., Plaintiffs and Appellants, v.
W&W COMMUNITY DEVELOPMENT, INC., Defendant and Respondent.

## COUNSEL

Henrichs Law Firm, John Henrichs; Law Office of Luis A. Carrillo and Luis A. Carrillo for Plaintiffs and Appellants.

Cihigoyenetche, Grossberg & Clouse, Katharine L. Spaniac and Anthony C. Ferguson for Defendant and Respondent.

## OPINION

**McKINSTER, J.**—This is an appeal by Cesar Garcia, plaintiff and appellant (hereafter plaintiff), from the summary judgment entered against him, both as an individual and as the representative of the estate of his daughter, Alexis Garcia, and in favor of defendant and respondent W&W Community Development, Inc., doing business as Children's Plus Foster Family Agency (hereafter defendant), on plaintiff's complaint seeking damages based on negligence and wrongful death. In the operative first amended complaint, plaintiff alleged that his two-year-old daughter Alexis drowned on August 16, 2006, when her foster mother, Irma Henry, left the child unattended for up to five minutes in a bathtub half filled with water. According to the complaint, defendant, a state-licensed foster family agency, had placed Alexis and her four-year-old brother in the licensed foster home of Irma Henry and her husband Walter after the County of Riverside declared the children dependents of the court and removed them from the custody of their mother.

Defendant moved for summary judgment, or in the alternative summary adjudication of facts, on the ground that for various reasons it was not liable to plaintiff for the acts of the foster parents. The trial court agreed with one of defendant's arguments—that defendant performs a quasi-governmental function and therefore is immune from liability—and entered summary judgment in defendant's favor and dismissed the complaint as to it.

Plaintiff contends in this appeal that defendant is not immune from liability and that he presented evidence that creates a triable issue of material fact with respect to that issue. We agree with plaintiff that defendant is not immune from liability. However, we nevertheless conclude that plaintiff's evidence does not raise a triable issue of material fact. Therefore, we will affirm.

## DISCUSSION

### 1.

### SUMMARY JUDGMENT STANDARD OF REVIEW

On appeal, we review de novo an order granting summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) The trial court must grant a summary judgment motion when the evidence shows that there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar*, at p. 843.) In making this determination, courts view the evidence, including all reasonable inferences supported by that evidence, in the light most favorable to the nonmoving party. (Code Civ. Proc., § 437c, subd. (c); *Aguilar*, at p. 843.) A defendant moving for summary judgment has the burden of producing evidence showing that one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (*o*)(2); *Aguilar*, at pp. 849, 850–851, 854–855.) The burden then shifts to the plaintiff to produce specific facts showing a triable issue as to the cause of action or the defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at pp. 849, 850–851.) Despite the shifting burdens of production, the defendant, as the moving party, always bears the ultimate burden of persuasion as to whether summary judgment is warranted. (*Aguilar*, at p. 850.)

In reviewing the propriety of an order granting summary judgment, we "apply the same three-step analysis required of the trial court. We begin by

identifying the issues framed by the pleadings since it is these allegations to which the motion must respond. We then determine whether the moving party's showing has established facts which justify a judgment in movant's favor. When a summary judgment motion prima facie justifies a judgment, the final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue." (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279 [48 Cal.Rptr.2d 229].) If there is no triable issue of material fact, "we affirm the summary judgment if it is correct on any legal ground applicable to this case, whether that ground was the legal theory adopted by the trial court or not, and whether it was raised by defendant in the trial court or first addressed on appeal." (*Jordan v. Allstate Ins. Co.* (2007) 148 Cal.App.4th 1062, 1071 [56 Cal.Rptr.3d 312].)

## 2.

## ANALYSIS

### A. Step One—Issues Framed by the Pleadings

Plaintiff alleged three purported theories of recovery, all based on the death of Alexis, in his first amended complaint: Negligence, wrongful death, and respondeat superior liability. The factual allegations pertinent to all three theories are incorporated or set out in plaintiff's first cause of action for negligence in which plaintiff alleged that Irma Henry had various health problems, including "lack of physical mobility requiring use of a walking cane, painful ailments requiring the ingestion of Xanax, an anti-depressant, Percodan, a prescription pain medication, sleeping disorders requiring the ingestion of Zantac, a seizure disorder requiring the ingestion of Dilantin, and an impaired memory." On August 16, 2006, Irma Henry placed two-year-old Alexis in "an adult bathtub filled with water," and left her there unattended for up to five minutes as a result of which Alexis drowned. Plaintiff alleged defendant was negligent in its selection, supervision, and training of Irma and Walter Henry as the foster parents for Alexis and her four-year-old brother in that defendant did not obtain Irma Henry's medical records, which would have shown that she had medical conditions that made her incapable of caring for a two-year-old toddler and a four-year-old allegedly developmentally delayed child. Plaintiff also alleged that defendant did not adequately train Irma Henry in how to supervise "children with physical incapacities"

such as Alexis.[1] In addition, plaintiff alleged, based on information and belief, that because of her impaired mental and/or physical health, Irma Henry forgot she had placed Alexis in the bathtub. Plaintiff alleged that defendant's negligence in selecting, training, and supervising Irma Henry was a direct and proximate cause of Alexis's death.

Defendant filed its answer, in the form of a general denial under Code of Civil Procedure section 431.30, and alleged numerous purported affirmative defenses, which include the affirmative defense that the first amended complaint fails to allege facts sufficient to constitute a cause of action against defendant, and that defendant is immune from liability because its action of placing a child in a foster home is a discretionary act and quasi-governmental function that entitles defendant to the immunities set out in Government Code sections 815 and 820.2.

The issues framed by the factual allegations of plaintiff's complaint set out above are whether defendant owed Alexis any of the alleged duties, and if so whether it breached any of those duties, and whether defendant's alleged breach caused the death of Alexis. In his third cause of action, plaintiff alleged that defendant is vicariously liable for the acts of Irma Henry because as a foster parent she was an agent, employee, officer, or servant of defendant, and it was reasonably foreseeable that placing Alexis in the care of Irma Henry would result in the child's death or in serious injury to the child.

## B. Step Two—Defendant's Showing

In its motion for summary judgment[2] defendant asserted that it was not liable to plaintiff under any theory of recovery alleged in plaintiff's complaint because it did not breach any duty owed to plaintiff, and it is not vicariously liable for the acts of Irma Henry. With respect to direct liability based on breach of its own alleged duty, defendant asserted it does not have a duty to supervise on a daily basis the care foster parents provide to children defendant places in the foster parents' home; defendant did not breach its duty to properly train Irma Henry as a foster parent; and defendant did not breach its duty to screen the Henrys for medical or physical limitations because the Henrys received medical clearance from a doctor. With respect to vicarious liability, defendant asserted that the Henrys as foster parents are independent contractors, not employees of, or joint venturers with, defendant

---

[1] Plaintiff alleged that Alexis had "special needs" because she was two years old and lacked the capacity to care for herself. Presumably the child's age was also the basis for the allegation that Alexis had "physical incapacities." Plaintiff did not present evidence to show the child had any other physical limitation.

[2] Defendant filed an amended notice of summary judgment motion, and that is the motion to which we refer in this opinion.

and therefore defendant is not vicariously liable for their negligence. In addition, defendant asserted that the volunteer exception to liability predicated on respondeat superior applies in this case and therefore it is not vicariously liable to plaintiff. Finally, defendant asserted that placement of children in foster care is a quasi-governmental function and therefore defendant is immune from liability.

In its separate statement of undisputed material facts, defendant asserted it was undisputed, among other things, that Alexis was removed from the care of her biological mother in the course of a dependency proceeding filed in Riverside County; when Alexis was placed with the Henrys on September 7, 2005, they were certified through Calvary Foster Agency as a foster care provider; on July 26, 2006, Irma Henry became a certified foster care provider through defendant; Alexis drowned in a bathtub on August 16, 2006, after Irma Henry put Alexis in a bathtub filled with water to a depth that reached Alexis's waist and then left the child unattended while Henry went to retrieve bath soap and a towel; Irma Henry completed a 12-hour certification training course before obtaining her foster care provider certification from defendant; the certification training course included safety, in general, and water safety in particular; in her training Irma Henry learned "never to leave a child unattended at any given time"; before certifying Irma Henry as a foster care provider defendant conducted a home study and evaluation of the Henrys' home; as part of the certification process, the Henrys provided defendant with health screening reports that stated Irma and Walter Henry were "physically fine" to care for children; and defendant visited the Henry home on three different days after defendant placed Alexis and her brother with the Henrys, and all three visits were positive. To support the noted facts defendant submitted, among other things, pertinent portions of Irma Henry's deposition testimony,[3] and copies of documents the Henrys submitted to defendant in order to obtain foster home certification.

 "To prevail in a negligence action, a plaintiff must show that the defendant owed a legal duty, the defendant breached that duty and the breach proximately caused injury to the plaintiff. [Citations.] 'Absent a legal duty, any injury is an injury without actionable wrong. [Citation.] "Duty, being a

---

[3] In its opposition to defendant's summary judgment motion, plaintiff filed objections to various items of defendant's supporting evidence. The trial court did not rule on those objections and instead deemed them "moot" because it found that all the facts necessary to rule on the immunity issue were set out in plaintiff's complaint. On appeal, defendant reasserts those objections, arguing among other things that, "[i]n truth," the trial court could not have resolved the immunity issue "without considering some parts of the declarations" defendant submitted in support of its motion. The evidence to which plaintiff objected is not relevant to our resolution of this appeal. Therefore we will not rule on plaintiff's objections.

question of law, is particularly amenable to resolution by summary judgment. [Citation.]" [Citation.]' [Citation.]" (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 396 [99 Cal.Rptr.3d 5].) The facts recounted above negate plaintiff's allegation that defendant (1) breached its duty to train Irma Henry and (2) breached its duty to screen Irma Henry for relevant medical problems or physical limitations. That showing meets defendant's obligation, noted above, to make a prima facie showing that would entitle it to judgment in its favor on the factual allegations in plaintiff's complaint.

Plaintiff's remaining allegations raise only issues of law, i.e., whether defendant had a duty to obtain the Henrys' medical records to determine whether they had ailments or were taking medications that would affect their ability to care for young children; and whether defendant had an obligation to supervise the day-to-day activities of its foster parents. Likewise, defendant's remaining claims in support of its summary judgment motion raise only questions of law. Those issues are whether defendant's act of placing children in a foster home is a quasi-governmental function that entitles defendant to governmental immunities; whether the Henrys as foster parents are independent contractors of defendant; and whether the volunteer exception to liability predicated on respondeat superior applies. We separately address these legal issues, below, as relevant to our resolution of this appeal.

Because we conclude defendant made the required prima facie factual showing on plaintiff's negligence and wrongful death claims, the burden shifts to plaintiff to present additional facts that would create a triable issue on those material factual allegations. Therefore, we next address the third step in summary judgment analysis—whether plaintiff's opposition created a triable issue of material fact.

## C. Step Three—Plaintiff's Showing in Opposition

In his opposition to defendant's summary judgment motion, plaintiff argued, as he does in this appeal, that Irma Henry's physical limitations combined with defendant's failure to properly train Henry contributed to Alexis's death. In that regard plaintiff first disputed defendant's material fact No. 8 in which defendant claimed it was undisputed that Irma Henry received 12 hours of training before being certified by defendant. According to plaintiff, Irma Henry did not complete 12 hours of training because one of the classes she attended was only an orientation to defendant and that orientation was presented by Maria Zaragoza who is not an instructor. Plaintiff's showing does not create a triable issue regarding material fact No. 8. It demonstrates only that as part of her precertification training, Irma Henry attended an orientation session. Plaintiff's showing does not address and therefore does not raise a triable issue with respect to the fact that Irma Henry completed 12

hours of training, as supported by the evidence defendant presented of the actual training Irma Henry completed.

Defendant's evidence includes not only the fact of her training but also Irma Henry's deposition testimony in which she stated that she knew not to leave a child unattended at any given time, and that after she put Alexis in the bathtub, Henry left the room in order to retrieve soap and a towel. Plaintiff does not dispute these facts. Instead plaintiff argued in the trial court, as he does on appeal, that Henry's lack of mobility contributed to Alexis's death, and defendant should have known about that medical condition and also that Henry had been taking medication for pain caused by bone spurs in her knee.

The defect in plaintiff's claim is that he does not provide any evidence to support his assertion that either fact, even if true, caused or contributed to Alexis's death. According to the only evidence offered on the issue, Alexis drowned because Irma Henry left the child unsupervised in a bathtub half filled with water. Plaintiff's claim assumes Alexis would not have drowned if Henry had walked faster and returned to the child more quickly. That argument assumes that Alexis did not slide under the water the minute Henry walked out of the bathroom. Plaintiff did not present any evidence to support that assumption. Plaintiff also did not present any evidence to support his claim that Henry got distracted after she left the bathroom, or forgot that she left the child in the tub. But even if she had, that evidence would not negate defendant's showing for the reason just discussed—its relevance depends on evidence showing when Alexis drowned in relation to when Irma Henry left the bathroom. The evidence shows only that the child drowned sometime after Henry left the bathroom.

Similarly, plaintiff did not present any evidence to show that as a result of the medications she took for pain or other purported physical ailments, Irma Henry left Alexis alone in the bathtub. The only evidence even remotely relevant to that claim is a statement recounted in the investigation notes prepared by Juan Jaimes, whom plaintiff identifies as a Riverside County social worker, that Irma Henry told the first sheriff's deputy to arrive at the house in response to the Henrys' 911 call that she "got distracted and left the child unattended in the bathtub for several minutes." The quoted statement, which according to his notes Jaimes learned from Lisa Enea who heard it from the deputy, is irrelevant in the absence of evidence to show that medication caused Henry's distraction and that distraction caused her to leave the child in the bathtub.

The evidence is undisputed that Alexis drowned because she was left in a bathtub half filled with water and without any supervision. Defendant's evidence shows that Irma Henry knew never to leave a child unsupervised, and nevertheless she placed Alexis in a bathtub half filled with water, and then left the child alone in the bathroom. Plaintiff does not dispute that Henry was "specifically instructed to never leave a child unattended at any time." Plaintiff also did not present any evidence to show that a cause other than Henry's act of leaving Alexis in the bathtub unsupervised contributed to Alexis's death by drowning.[4] Accordingly, we conclude defendant's showing on this issue is sufficient to negate defendant's direct liability for the death of Alexis.

### D. Vicarious Liability

As noted above, plaintiff alleged in his complaint, albeit as a purported cause of action, that under the principle of respondeat superior defendant is vicariously liable for the negligent act of Irma Henry. "The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment. [Citation.]" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 [48 Cal.Rptr.2d 510, 907 P.2d 358], fn. omitted.)

Defendant contended in the trial court that a foster care agency licensed by the state is performing a governmental function and therefore should have the same immunity from liability as a county. According to defendant, counties, as governmental entities, are immune from liability for the acts of their social workers. Therefore, defendant should also be immune from liability for the acts of Irma Henry. The trial court agreed with defendant and found that defendant does have the same immunity as a county and that a county in turn is immune from liability for its own acts and the acts of its employees. On that basis, the trial court granted defendant's summary judgment motion.

Assuming without actually deciding defendant's initial assertion is correct, and that it has the same immunity from liability as a county, that assertion does not resolve the issue of whether defendant is vicariously liable for the

---

[4] Plaintiff contends as he did in the trial court that defendant failed to comply with various requirements of title 22 of the California Code of Regulations that govern licensing of foster homes. Plaintiff did not and cannot show that the purported oversights contributed to the death of Alexis in that they caused Irma Henry to leave Alexis in the bathtub. Likewise defendant's purported failure to conduct a sufficiently detailed home study from which it could "extrapolate information about the foster mother's medical condition" did not contribute to the death of Alexis. As previously discussed, plaintiff did not present any evidence to show that Irma Henry's physical condition caused her to leave the child in the bathroom, or otherwise contributed to the death of Alexis. Nor did plaintiff show that any other purported oversight on the part of defendant contributed to or caused Alexis's death.

acts of its employees. Defendant's claim that counties are immune from liability for the acts of their employees is incorrect. *County of Los Angeles v. Superior Court (Terrell)* (2002) 102 Cal.App.4th 627 [125 Cal.Rptr.2d 637] *(Terrell)*, which defendant cited in the trial court and relies on in this appeal as authority for its immunity claim does not hold, as defendant contends, that a county is immune from liability for the acts of its employees. Instead it stands for the unremarkable principle that a county is not liable for the acts of a county employee if the employee is immune from liability for those acts under Government Code section 820.2. *(Terrell*, at p. 644.)

 A county is not immune from liability for the acts of its employees. "A public entity may be derivatively liable under certain circumstances for acts or omissions of employees." *(Terrell, supra*, 102 Cal.App.4th at p. 643.) Government Code section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." In short, even if we were to agree with defendant that it has the same liability as a county for the acts of its employees, that claim does not foreclose liability on defendant's part. The trial court was incorrect in finding otherwise.

Defendant's liability, either as a private entity or a quasi-governmental entity, for Irma Henry's negligent conduct depends initially on whether Henry as a foster parent was an employee of defendant, the foster family agency. According to the undisputed facts, defendant is a foster family agency licensed by the State of California in accordance with the provisions of the Health and Safety Code. Health and Safety Code section 1502, subdivision (a)(4) defines a "foster family agency" as "any organization engaged in the recruiting, certifying, and training of, and providing professional support to, foster parents, or in finding homes or other places for placement of children for temporary or permanent care who require that level of care as an alternative to a group home." According to defendant's factual showing in support of its motion for summary judgment, Irma Henry's relationship with defendant was that of a foster parent certified by defendant to provide care in a "foster family home," i.e., "any residential facility providing 24-hour care for six or fewer foster children that is owned, leased, or rented and is the

residence of the foster parent or parents, including their family, in whose care the foster children have been placed." (Health & Saf. Code, § 1502, subd. (a)(5).)

According to the "Agency-Foster Parent Admission Agreement" pursuant to which defendant placed Alexis with Henry, defendant would "reimburse [Henry] $650.00 per month for room and board, clothing, personal needs, recreation, education, incidentals, and supervision for [Alexis]." The agreement also stated the respective responsibilities of defendant and Henry with respect to Alexis. The agreement did not create an employer-employee relationship because defendant did not control the manner in which Henry provided day-to-day care for Alexis. (See *Hartford A. & I. Co. v. Indus. Acc. Com.* (1928) 93 Cal.App. 313, 316 [269 P. 733] [" 'One who renders service for a specified recompense for a specified result, under the control of his principal as to the result of his work only, and not as to the means by which such result is accomplished' is an independent contractor."].) At most, Irma Henry was an independent contractor.

■ "Under the common law, a person can be vicariously liable for the acts of his agents and employees under the doctrine of *respondeat superior.* [Citation.] An independent contractor, however, is not an agent or employee. If the person hired an independent contractor—i.e., one over whom the person has no right of control as to the mode of doing the work [citation]—to perform work, the person who hired the contractor generally 'was not liable to third parties for injuries caused by the contractor's negligence in performing the work.' [Citation.]" (*Orosco v. Sun-Diamond Corp.* (1997) 51 Cal.App.4th 1659, 1668 [60 Cal.Rptr.2d 179], citing 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 115, p. 109 and quoting *Privette v. Superior Court* (1993) 5 Cal.4th 689, 693 [21 Cal.Rptr.2d 72, 854 P.2d 721].)

Because we conclude the undisputed evidence shows Irma Henry was an independent contractor in performing her responsibilities as the foster parent of Alexis, as a matter of law, defendant is not vicariously liable for Henry's conduct.

■ In summary, we conclude defendant met its burden to demonstrate that it is not directly or vicariously liable for the act that caused the death of Alexis. Therefore, we must conclude summary judgment was properly entered in defendant's favor.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to defendant.

Hollenhorst, Acting P. J., and King, J., concurred.

A petition for a rehearing was denied August 12, 2010, and the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied October 13, 2010, S185772.