Filed 8/29/14  De la Sol v. Xerox corp. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LISA DE LA SOL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>XEROX CORPORATION,<br><br>        Defendant and Respondent. | A138462<br><br>(San Francisco County<br>Super. Ct. No. CGC-10-501674) |

Plaintiff and appellant Lisa de la Sol (plaintiff) was injured when her vehicle was struck by a car driven by Maurice Coker, who was employed by The Document Company (TDC) and was on his way home after servicing a Xerox copy machine for one of TDC's customers.  We affirm an order granting summary judgment in favor of defendant and respondent Xerox Corporation (Xerox), because plaintiff presented no evidence Coker was acting as an employee or agent of Xerox at the time of the accident.

FACTS AND PROCEDURAL HISTORY

TDC is a business that sells and services copiers, printers, fax machines and related products.  It is an authorized sales agent for office equipment manufactured by Xerox, though it also sells products from other manufacturers.  TDC employs repair technicians but does not provide them with company cars.  Instead, it compensates the technicians for using their own vehicles by reimbursing them for mileage, parking and tolls.

1

In 2007, Xerox and TDC entered into a "Business Relationship Agreement" that authorized TDC to market certain Xerox products. The Business Relationship Agreement provides: "[¶] 2.1 Business Associate [TDC] is an Independent Contractor. Business Associate's sole relationship with Xerox shall be that of an independent contractor. Business Associate shall make no warranties or representations, or assume or create any obligations on Xerox's behalf, except as may be expressly permitted by Xerox. Each party shall be solely responsible for the actions of all their respective employees, agents and representatives." Xerox and TDC also executed an "Authorized Sales Agent Schedule" authorizing TDC to represent Xerox as an authorized sales agent.

Under the terms of these agreements, TDC was authorized to solicit customers and enter into agreements for the sale of new Xerox equipment in exchange for a commission, with Xerox being directly responsible for the delivery of the new equipment, as well as its maintenance and service. Xerox also permitted TDC to purchase certain copy machines from Xerox and resell those machines directly to customers. TDC alone was responsible for the delivery and service of those machines, and would enter into service contracts to provide maintenance for a set period of time.

TDC sold a Xerox model M20 copier to Golden West Foreclosure (Golden West), which purchased a service agreement directly from TDC. Xerox did not receive any compensation for the service agreement, and its only involvement in the transaction was to sell the copier to TDC, which it then sold to Golden West.

Coker was employed by TDC as a repair technician and, like other TDC technicians, used his own car when traveling to service calls. On March 5, 2009, TDC sent him to repair the copy machine at Golden West, which was his last appointment of the day. On his way home after the service call, his car collided with a vehicle driven by plaintiff.

Plaintiff filed a civil complaint seeking damages for physical and emotional injuries suffered as a result of the accident. The complaint named TDC and Xerox as defendants and alleged they were "vicariously liable for the general negligence of their

employee Maurice Coker, who was acting within the scope of their employment at the time of the motor vehicle accident."

Xerox filed a motion for summary judgment on the ground plaintiff could produce no evidence to show Coker was an employee of Xerox. The trial court granted the motion but also granted plaintiff leave to amend the complaint to allege Xerox was vicariously liable based on a theory of agency. Plaintiff filed a first amended complaint alleging TDC and Coker were agents of Xerox at the time of the accident.

Xerox submitted a second motion for summary judgment based on the lack of evidence of any agency relationship between Xerox and TDC or Coker that would render Xerox vicariously liable for plaintiff's injuries. The trial court granted the motion: "Xerox satisfied its burden of production and plaintiff did not present any evidence creating a triable issue whether Xerox is vicariously liable for the conduct of Mr. Coker that caused plaintiff's injuries. The Business Relationship Agreement and the Authorized Sales Agent Schedule only show an agency relationship between the defendants for the sales of certain Xerox products. The Authorized Sales Agreement Schedule does not demonstrate the right to control the manner and means of repairing Xerox products necessary to establish an agency relationship during the repair or servicing of Xerox products. It is undisputed at the time of the accident Mr. Coker was driving home after servicing a Xerox machine. None of the evidence presented by plaintiff shows that he was employed, in whole or in part, per an arrangement whereby Xerox directed or controlled the terms, manner or means of plaintiff performing his job."

DISCUSSION

A principal is responsible to third persons for negligent acts committed by its agent during the course and scope of the agency. (Civ. Code, § 2338; *Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278, 1300.) Plaintiff contends she should have been permitted to proceed to trial on the theory Xerox is vicariously liable for her injuries under an agency theory. We disagree.

3

## I. *Summary Judgment and Standard of Review*

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment has the initial burden of producing evidence showing that either one or more elements of the cause of action cannot be established or there is a complete defense thereto. (*Garcia v. W&W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1041 (*Garcia*); Code Civ. Proc., § 437c, subd. (p)(2).) The burden then shifts to the plaintiff to produce evidence of specific facts showing a triable issue of material fact as to the cause of action or defense. (*Garcia,* at p. 1041; Code Civ. Proc., § 437c, subd. (p)(2).)

Despite these shifting burdens, the defendant, as the moving party, bears the ultimate burden of persuasion as to whether summary judgment is warranted. (*Garcia*, *supra*, 186 Cal.App.4th at p. 1041.) When the defendant moves for summary judgment in a case in which the plaintiff would have the burden of proof by a preponderance of the evidence, "the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' " (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

## II. *Evidence Presented*

In support of its motion for summary judgment, Xerox submitted the declaration of Randy Lee Fraser, its regional partner general manager, as well as excerpts from the depositions of Erik Smith, the president of TDC, Alberto Esver, the service manager of TDC, and Coker. Copies of the Business Relationship Agreement and Authorized Sales Agent Schedule executed by Xerox and TDC were also submitted.

Fraser's declaration described the business relationship between Xerox and TDC as follows: "3. On or about December 6, 2007 and on behalf of Xerox, I entered into a Business Relationship Agreement and an Authorized Sales Agent Schedule with Erik Smith, President of The Document Solutions Company aka The Document Company . . . . [¶] 4. Pursuant to the terms of the Business Relationship Agreement, The Document Company was permitted to purchase certain new or refurbished Xerox model low volume copy machines, either from Xerox directly or through unrelated party vendors, and resell those copy machines to its customers in the Bay Area. When The Document Company purchases and resells a copy machine in this manner, Xerox does not learn of and has no machine servicing obligation to the end user (purchasing entity) unless the end user contacts Xerox and makes arrangements for a service contract. [¶] 5. The Document Company can and does enter into its own machine service contracts with end users who have purchased Xerox copy machines directly from that company. The Document Company employs its own technicians to service these machines and when it does so, Xerox does not receive any payment or compensation in connection with the service calls. . . . [¶] 6. Pursuant to the terms of the Authorized Sales Agent Schedule, The Document Company was authorized to solicit customers and enter into agreements for the sale of certain new items of Xerox equipment. However, under this agreement, Xerox was responsible for delivery of the equipment to the customer as well as service and maintenance of that equipment. [¶] 7. During the course of my deposition on November 4, 2011, I was informed that on March 5, 2009 an individual by the name of Maurice Coker had serviced a Xerox machine at Golden West Foreclosure in Redwood City, California. Coker is not and never has been an employee of Xerox. Further, as of

5

March 5, 2009, Xerox did not have any machine service contracts with Golden West Foreclosure. If Coker was servicing a Xerox machine at Golden West Foreclosure on March 5, 2009, Xerox had no involvement in scheduling the service call or directing any of the activities of Coker regarding the service call."

Smith's deposition testimony described TDC's relationship with Xerox in similar terms as Fraser's declaration. TDC had "two functions" with respect to Xerox. The first was the buying and reselling of Xerox machines, sometimes secondhand, which it then would sell, deliver and service for its customers. The second was when TDC acted as an authorized sales agent for Xerox, and "in that instance [TDC] might simply take an order on Xerox's behalf and hand the paperwork off to them and then they fulfill the rest, meaning they deliver it and their technician services it and their technician fixes it." Smith testified TDC had bought an M20 copier from Xerox, sold it to Golden West, and maintained that machine under a service contract between TDC and Golden West. Xerox's only involvement in the transaction was to sell TDC the copier; it did not get any portion of the maintenance agreement fee.

In the portion of his deposition submitted by Xerox, Esver testified that on the afternoon of the accident, Coker left the TDC office and went to Golden West to replace a fuser on their copier.

Coker testified in his deposition he was not able to recall the details of the service call to Golden West on the day of the accident, but he was injured while working as a technician for TDC.

In her opposition to the motion for summary judgment, plaintiff did not dispute that Coker was driving home from servicing the Xerox copier at Golden West when the accident occurred. She presented no evidence Xerox had any direct involvement in the service contract for the Golden West copier or the service call to Golden West on the day of the accident. Instead, she argued the following circumstances showed TDC was acting as Xerox's agent at the time of the accident: (1) The terms of the Authorized Sales Agent Schedule establishes TDC as an agent of Xerox; (2) Coker was instructed to use his own car on the day of the accident in the course of his employment for TDC; (3) the terms of

6

the Authorized Sales Agent Schedule prohibited TDC from providing repair services for Xerox products without authorization from Xerox; (4) TDC was allowed to store Xerox products at its place of business and Coker would at times carry Xerox machines and parts in his vehicle, meaning Xerox "may have derived incidental benefit" from Coker's use of his vehicle; (5) TDC would receive compensation in the form of a commission for the sale of Xerox products under the Authorized Sales Agent Schedule, and Xerox had the right to control TDC's activities with respect to Xerox products; and (6) TDC holds itself out as being part of Xerox and the president of Golden West thought TDC was Xerox.

### III. *Agency Theory—Analysis*

"An agent is one who represents another, called the principal, in dealings with third persons." (Civ. Code, § 2295.) Though the rules regarding a principal's vicarious liability are similar with respect to agents and employees, the two relationships are not identical: " 'It is said that a[n] *employee works* for his employer, while an *agent* also *acts for and in the place of the principal* for the purpose of bringing him into legal relations with third persons.' " (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1047, citing 2 Witkin, Summary of Cal. Law (9th ed. 1987) Agency and Employment, § 5, p. 24, italics in original.) " ' "The significant test of an agency relationship is the principal's right to control the activities of the agent. [Citations.] It is not essential that the right of control be exercised or that there be actual supervision of the work of the agent; the existence of the right establishes the relationship." ' " (*Violette v. Shoup* (1993) 16 Cal.App.4th 611, 620.)

The question of whether an agency exists is ordinarily one of fact unless the evidence is susceptible of a single inference. (*McCollum v. Friendly Hills Travel Center* (1985) 172 Cal.App.3d 83, 91.) Where the facts are undisputed, the issue becomes one of law. (*Magnecomp Corp. v. Athene Co.* (1989) 209 Cal.App.3d 526, 536.) Similarly, the determination of whether an agent has acted within the course and scope of the agency is generally one of fact but becomes an issue of law when the facts are undisputed and no

conflicting inferences are possible. (See *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 213.)

The evidence presented by Xerox in support of its summary judgment motion showed TDC acted as Xerox's sales agent for the purpose of selling certain new products to customers on behalf of Xerox on a commission basis. TDC also sold products it purchased from Xerox directly to customers, and performed maintenance on those products under service contracts purchased by those customers. Xerox had no involvement in these direct sales and maintenance contracts, other than selling products to TDC that were then resold. The Golden West copier was sold and maintained by TDC, not Xerox, and Xerox was not involved in that transaction.

The sole inference to be drawn from these facts is that with respect to the Golden West copier and the maintenance contract between Golden West and TDC, Xerox was a vendor, not a principal in an agency relationship. The evidence presented by Xerox was sufficient to shift the burden to plaintiff to demonstrate a triable issue of material fact as to whether TDC was in fact acting as Xerox's agent. (*Garcia*, *supra*, 186 Cal.App.4th at p. 1041.)

In an effort to show she met this burden, plaintiff notes Xerox identified TDC as its "Authorized Service Provider" on its Internet website and referred to TDC as a "Xerox Agent." To the extent such evidence may be considered by us on appeal (plaintiff cites to a declaration and exhibits submitted in support of her opposition to Xerox's *first* summary judgment motion, rather than evidence presented in opposition to the *second* summary judgment motion here at issue), it does not raise a triable issue of material fact concerning the existence of agency at the time of the accident. Assuming TDC was an agent of Xerox for certain purposes, Xerox had no involvement in the maintenance contract between TDC and Golden West and no involvement in the service call that preceded the accident.

Plaintiff suggests Xerox had the right to control TDC's and Coker's handling of the service call to Golden West because the Business Relationship Agreement stated in part, "[TDC] shall not market, either as an agent, dealer, reseller, manufacturers'

representative, or in any other capacity any non-Xerox consumable supplies (e.g., toner, developer, fusers, CRUs) specifically designed for use in any Xerox products." Plaintiff reasons that because Coker went to Golden West to replace a fuser in their copier, and because the Business Relationship Agreement required him to use a Xerox fuser as opposed to a non-Xerox fuser designed for use in Xerox products, Xerox received a benefit from the service call.

That Xerox may have benefited from TDC's obligation to use only Xerox parts does not mean it was exercising a degree of control sufficient to establish agency. In an analogous context, case law has recognized a "franchisor's interest in the reputation of its entire system allows it to exercise certain controls over the enterprise without running the risk of transforming its independent contractor franchisee into an agent." (*Cislaw v. Southland Corp.* (1992) 4 Cal.App.4th 1284, 1292; see, generally, *Patterson v. Domino's Pizza, LLC* (Aug. 28, 2014, S204543) ___ Cal.4th ___ [2014 Cal. Lexis 6251, pp. *30-31] [franchisor "becomes potentially liable for actions of the franchisee's employees[] only if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and relevant day-to-day aspects of the workplace behavior of the franchisee's employees"].) The cited portion of the Business Relationship Agreement sets forth a general requirement to use Xerox products in the service of Xerox products, but this does not amount to substantial control over the operation of TDC, its employees, or the means and the manner in which copier repairs are performed on TDC service contracts, such as would be required to establish agency. (*Id*. at pp. 1288, 1296 [franchisor may control its trademarks, products and the quality of its services, but may be subject to vicarious liability when it assumes substantial control over local operation, management-employee relations, or employee discipline].)

Plaintiff also contends a triable issue of fact exists as to agency because the service agreement for Golden West's copier was "between Xerox, TDC and Golden West" and shows "TDC was acting within the scope of its authorization as Xerox's service provider." Plaintiff relies on a "Fax Service Agreement Terms & Conditions" that was submitted after the briefing on the summary judgment motion was complete, contrary to

an order by the court that no further papers be filed. In light of the order regarding further filings, the Fax Service Agreement does not appear to be properly before us. (But see Cal. Rules of Court, rule 3.1300(d) ["No paper may be rejected for filing on the ground that it was untimely submitted for filing. If the court, in its discretion, refuses to consider a late filed paper, the minutes or order must so indicate"].)[1]

Even if we consider the substance of the Fax Service Agreement, it does not raise a triable issue of material fact regarding agency because it does not contradict Xerox's evidence that TDC sold the copier and service contract directly to Golden West, without involvement by Xerox. The Fax Service Agreement was part of a package of 17 documents attached to a declaration by Michael D. Orth, the president of Golden West, who states they are true and correct copies of Golden West business records. Although its first paragraph contains a warranty provision stating Xerox would replace defective equipment without charge during a three-year period, the remainder of the document makes it clear maintenance services on the machine would be provided by TDC: "[TDC] will make all necessary adjustments and repairs to keep the Equipment in good working order. Parts required for repair may be recovered or reprocessed, and replaced parts will become property of [TDC] at its option. . . . ¶ . . . Services will be provided during [TDC] established services availability hours . . . . ¶ . . . [TDC] may upon written notice prior to the end of any terms, change the pricing, terms and conditions applicable during any renewal term. . . . ¶ *As an Authorized Xerox Service Provider, you may purchase your Fax/Printer service through [TDC]. You will be fully responsible to call [TDC] directly for service when needed. [TDC] will not be responsible for any invoices/charges incurred from Xerox Corp. to your company if/when Xerox Corp. is called for service. If*

---

[1] After the judge who heard the summary judgment motion became unavailable to rule, submission of the motion was vacated in an order providing "[t]he parties shall not file any new papers and the Court will re-calendar the matters for hearing." In apparent violation of this order, plaintiff submitted a supplemental declaration by her trial counsel and a number of additional documents, including the Fax Service Agreement. The matter was later resubmitted without further appearances by counsel because the judge who heard the motion became available to rule on the matter. The court's order granting summary judgment does not reference the declaration and documents filed by plaintiff.

10

*you fail to call [TDC] for service/maintenance needs, you will be responsible for those charges.*" (Italics added.)

Plaintiff suggests TDC was an ostensible, if not actual, agent of Xerox with respect to the Golden West service contract, because Coker and other TDC employees told people they worked for Xerox and Golden West did not itself differentiate between TDC and Xerox. (See Civ. Code, § 2315 ["An agent has such authority as the principal, actually or ostensibly, confers upon him"].) Ostensible agency is not a concept that assists plaintiff.

An agency " ' "can be established either by agreement between the agent and principal, that is, a true agency [citation], or it can be founded on ostensible authority, that is, some intentional conduct or neglect on the part of the alleged principal creating a belief in the minds of third persons that an agency exists, *and a reasonable reliance thereon by such third persons.*" ' " (*Goldman v. Sunbridge Healthcare, LLC* (2013) 220 Cal.App.4th 1160, 1173, italics added.) Ostensible agency rests on the principle of estoppel. (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 404.) " ' "[I]f a principal by his acts has led others to believe that he has conferred authority upon an agent, he cannot be heard to assert, *as against third parties who have relied thereon in good faith*, that he did not intend to confer such power . . . ." ' " (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 502, italics added.)

"The essential elements of the doctrine of ostensible authority are: representations by the principal, justifiable reliance thereon by the third party, and change of position or injury resulting from such reliance." (*Dickens v. Bunker* (1959) 169 Cal.App.2d 383, 388.) Whatever confusion might have existed about TDC's status in the minds of TDC customers such as Golden West, there is no evidence *plaintiff* ever relied on the belief TDC was an agent of Xerox. She had the misfortune of being hit on the highway by a stranger, and any vicarious liability for the negligence of this driver must attach through the doctrine of actual agency. As we have already discussed, no triable issue of fact exists as to actual agency.

11

The single inference to be drawn from the undisputed facts is that TDC and Coker were not acting as agents of Xerox during the service call to Golden West or at the time of the accident that followed the service call.  Summary judgment was appropriately granted.

DISPOSITION

The judgment is affirmed.  Xerox shall recover its ordinary costs on appeal.


_____
NEEDHAM, J.


We concur.


_____
JONES, P.J.


_____
SIMONS, J.