Filed 8/28/15  Yount v. City and County of San Francisco CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KATHY YOUNT et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> CITY AND COUNTY OF SAN FRANCISCO et al., <br><br>     Defendants and Respondents. | A142933 <br><br> (San Francisco County <br> Super. Ct. No. CGC-13-533102) |

Dylan Yount jumped to his death from the ledge outside his apartment after officers from the San Francisco Police Department had arrived on the scene.  His mother, appellant Kathy Yount, filed a civil action against respondents the City and County of San Francisco, the San Francisco Police Department and the San Francisco Fire Department (collectively, "the City") for wrongful death, violation of the Bane Act (Civ. Code, § 52.1), and intentional infliction of emotional distress.  We affirm an order granting summary judgment in favor of the City.

FACTS AND PROCEDURAL HISTORY

On February 16, 2010, at about 3:07 p.m., the San Francisco Police Department received its first 911 call regarding a man who was standing on a ledge of the Forever 21 retail store building near the corner of Market Street and Powell Street.  Dispatchers broadcast the call and Officer Cezar Perez arrived on the scene, where he saw Mr. Yount standing on the ledge outside of an apartment on what appeared to be the sixth floor of the building.  Perez immediately began yelling at Mr. Yount to go inside.

1

Perez took several steps after his arrival: (1) calling for a "Code 33" to clear all radio traffic on one of the channels except for communications about the incident; (2) calling for a "hostage negotiator," an officer specially trained to deal with both suicide attempts and hostage situations; (3) calling for more officers to clear the area below the ledge to protect the public. Perez continued to yell at Mr. Yount to go back inside, at one point yelling, "Get back inside your apartment, you fool! Get back inside!" Police officers taped off the area below the ledge and cleared it of pedestrians.

Officer Craig Canton, a trained hostage negotiator, arrived at about 3:21 p.m. and decided that given the noise level from the crowd in the area, it would be better to enter the building and attempt to speak to Mr. Yount from the apartment rather than from the ground, a tactic that might also lure Mr. Yount back inside. Canton's entry was delayed due to building security and the lack of any receptionist or security guard who could help, and he was unable to enter the apartment before Mr. Yount jumped to his death at about 3:25 p.m. Approximately 15 minutes had elapsed between the arrival of the first police officer and the fatal jump.

Roberto Lopez was in the area with his camera and took several video clips and still images of Mr. Yount standing on the ledge and then making the jump. The footage also shows a crowd that gathered to watch Mr. Yount, and pans back and forth between his position on the ledge and the crowd. Mr. Yount, who was wearing only blue boxer shorts, did not speak or otherwise engage with the crowd or the police. He spent much of the time looking down from the ledge with his hands on his hips. Some people in the crowd were laughing, joking or yelling inappropriate things such as "Jump!" and "Do it!" Others appeared distressed and some called out "Don't do it!," "Don't jump!" and "Sit down!" Several people were taking photographs or videos of Mr. Yount with their cell phones.

Appellant filed a government tort claim with the City on July 26, 2013, seeking damages for the death of her son. The stated basis of the claim was, "On February 16, 2010, [t]he City and County of San Francisco, to include but not limited to, the San Francisco Police Department, [t]he San Francisco Fire Department, failed to properly

2

respond to the scene, failed to properly control the crowd scene, failed to intervene at the scene, and failed to deploy life[-]saving tactics and equipment at the scene. Due to their failures aforementioned, a death wrongfully occurred for which the City and County of San Francisco et al[.] are responsible." The only claimant listed was "Kathie Yount"[1] and the only description given of her injury, property damage or loss was "wrongful death." No tort claim was filed on behalf of the estate of Mr. Yount.

On March 9, 2011, appellant filed a suit in federal district court against the City under 42 United States Code section 1983 and California state law, alleging the police should have prevented her son's suicide. The federal court granted the City's motion for summary judgment on the federal claim, declined to exercise supplemental jurisdiction over the state law claims, and dismissed the state law claims without prejudice. (28 U.S.C. § 1367(c)(3).)

On July 26, 2013, after the federal suit had been dismissed, appellant filed a civil complaint against the City in state court alleging causes of action for wrongful death, violation of the Bane Act, and intentional infliction of emotional distress. The suit was filed by appellant as an individual and in her capacity as the personal representative of Mr. Yount's estate. The City filed a motion for summary judgment or summary adjudication on various grounds, and the trial court granted summary judgment in a written order entered July 23, 2014. The court concluded that the police did not owe Mr. Yount a duty of care or increase his risk of danger, as necessary for the wrongful death claim; that the undisputed facts did not establish the Bane Act and intentional infliction of emotional distress claims; and that appellant, in her capacity as a personal representative of Mr. Yount's estate, had failed to include the claims for Bane Act violations and intentional infliction of emotional distress in the tort claim against the City.

DISCUSSION

Appellant contends the trial court should have denied the motion for summary judgment because (1) the police on the scene had a duty to assist Mr. Yount, (2) the

---

[1] Different spellings of appellant's first name appear in the record.

evidence supports a causal connection between the actions of the police and Mr. Yount's death, (3) the tort claim filed by appellant was sufficient to preserve the claims for Bane Act violations and intentional infliction of emotional distress, and (4) the evidence supported those claims. We conclude (1) summary judgment was properly granted on the wrongful death claim because the police had no legal duty to prevent Mr. Yount's death, making it unnecessary to reach the issue of causation; (2) appellant did not file a government tort claim presenting the survivor claims for violation of the Bane Act and intentional infliction of emotional distress; and (3) even if the tort claim appellant filed with the City could be construed to include the Bane Act and intentional infliction of emotional distress claims, the undisputed evidence establishes the City is entitled to judgment thereon as a matter of law.

### I. *Summary Judgment and Standard of Review*

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment has the initial burden of producing evidence showing that either one or more elements of the cause of action cannot be established or there is a complete defense thereto. (*Garcia v. W&W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1041 (*Garcia*); Code Civ. Proc., § 437c, subd. (p)(2).) The burden then shifts to the plaintiff to produce evidence of specific facts showing a triable issue of material fact as to the cause of action or defense. (*Garcia,* at p. 1041; Code Civ. Proc., § 437c, subd. (p)(2).) The existence of a legal duty, being a question of law, " ' "is particularly amenable to resolution by summary judgment." ' " (*J.L. v. Children's Institute, Inc.* (2009) 177 Cal.App.4th 388, 396.)

"On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers . . . . [Citation.] Under California's traditional rules, we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively

4

negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.)

II. *The Police Had No Duty of Care That Would Support a Wrongful Death Claim*

A wrongful death claim belongs not to the decedent, but to his or her heirs as specified by statute. (Code of Civ. Proc., §§ 377.60, 377.61; *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1263-1264.) The elements of a cause of action for wrongful death include a tort, such as negligence or some other wrongful act, and a resulting death. (*Lopez v. City of Los Angeles* (2011) 196 Cal.App.4th 675, 685.) Appellant's claim for wrongful death was based on the alleged negligence of the police who responded to the scene of Mr. Yount's suicide. " '[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury.' [Citations.] Thus, duty is a critical element of negligence liability." (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 629 (*Hayes*).)

The existence of a duty of care is a question of law to be determined by the court alone and "is simply a shorthand expression for the sum total of policy considerations favoring a conclusion that the plaintiff is entitled to legal protection." (*Camp v. State of California* (2010) 184 Cal.App.4th 967, 975 (*Camp*).) Although the California Supreme Court has not directly addressed whether officers coming to the aid of a suicidal person owe that person a duty of care (*Hayes*, *supra*, 57 Cal.4th at p. 636), "[t]he general rule is that, 'one has no duty to come to the aid of another. A person who has not created a peril is not liable in tort merely for failure to take affirmative action to assist or protect another unless there is some relationship between them which gives rise to a duty to act.' [Citation.] *A police officer, paramedic or other public safety worker is as much entitled to the benefit of this general rule as anyone else*. [Citations]." (*Camp*, at p. 975, italics added.) "California courts have found no duty of care and have denied recovery 'for

5

injuries caused by the failure of police personnel to respond to requests for assistance, the failure to investigate properly, or the failure to investigate at all, where the police had not induced reliance on a promise, express or implied, that they would provide protection.' " (*Ibid*., citing *Williams v. State of California* (1983) 34 Cal.3d 18, 25 (*Williams*).)

In *Adams v. City of Fremont* (1998) 68 Cal.App.4th 243, 249-261 (*Adams*), a different division of this court considered a city's liability for the death of a suicidal individual armed with a gun who fatally shot himself during a police standoff before being shot by officers who mistakenly believed he was shooting at them. In a divided opinion, the majority held that "police officers responding to a crisis involving a person threatening suicide with a loaded firearm have no legal duty under tort law that would expose them to liability if their conduct fails to prevent the threatened suicide from being carried out." (*Id*. at p. 248.) The majority applied the "traditional" factors of *Rowland v. Christian* (1968) 69 Cal.2d 108, 112-113, and concluded these factors did not favor liability. "On balance, the relevant public policy considerations militate against imposing a legal duty on police officers to take reasonable steps to prevent a threatened suicide from being carried out. The foreseeability and certainty of harm suffered are factors which favor imposing a duty. The absence of moral blame, the remoteness of the connection between the conduct of [the officers] and the harm suffered, the policy of preventing future harm, consequences to the community, the role of law enforcement in society, and the potential detriment to the public in imposing judicial allocation of resources all heavily favor shielding law enforcement personnel from tort liability in instances such as this." (*Adams*, at p. 276.)[2]

---

[2] The dissent in *Adams* agreed "the police have no enforceable legal duty to assist persons in danger" but concluded that two exceptions to the general rule applied in light of the facts of that case: " 'First, even when one is not under a duty to act to protect or aid another, if one voluntarily undertakes to do so, he or she will usually be under a duty to exercise reasonable care. Second, a person may in some instances be obligated to take certain affirmative steps to protect or aid another if that person stands in some "special relationship" to either the person endangered or the person whose conduct may injure the person endangered.' " (*Adams*, *supra*, 68 Cal.App.4th at p. 291 (dis. opn. of Kline, J.).) As we discuss below, these exceptions do not apply to the case before us.

We agree with *Adams* that police officers responding to a call regarding a suicidal individual do not have a general duty to save that individual. Liability cannot be imposed on the City solely because the officers who responded to the 911 call regarding Mr. Yount's position on the ledge did not succeed in preventing his death. Recognizing this rule (though disagreeing with it),[3] appellant argues that a duty of care should be found in this case because (1) the very presence of police made other people unlikely to help, and (2) the officers "inexplicably join[ed] the crowd in hurling insults at Mr. Yount while he was in the most critical part of his life-or-death decision." We are not persuaded.

"A duty of care may arise where the evidence demonstrates 'the requisite factors to a finding of special relationship, namely detrimental reliance by the [citizen] on the officers' conduct, [or on] statements made by [the officers] which induced a false sense of security and thereby worsened [the citizen's] position." (*Camp*, *supra*, 184 Cal.App.4th at pp. 976-977 [officer owed no duty of care to passenger injured in automobile accident where his claimed negligence in rendering assistance at the scene was nonfeasance rather than misfeasance], citing *Williams*, *supra*, 34 Cal.3d at p. 28 [highway patrol officer who came to aid of injured motorist did not assume duty of care requiring him to secure information or preserve evidence relevant to her claim against a third party absent additional factors not alleged in complaint].) In such cases, "[t]he breach of duty may be an affirmative act which places the person in peril or increases the risk of harm." (*Williams*, at p. 24; see *Lugtu v. California Highway Patrol* (2001) 26 Cal.4th 703, 715-718, 722-724 (*Lugtu*).) "[P]recious few courts have actually imposed a duty of care on law enforcement officers under this doctrine. . . . These cases involved police officers who made misrepresentations that induced a citizen's detrimental reliance [citation], placed a citizen in harm's way [citations], or lulled a citizen into a false sense of security and then withdrew essential safety precautions [citation]." (*Adams*, *supra*, 68 Cal.App.4th at pp. 279-280.)

---

[3] We decline appellant's request to "evolve this rule" and hold that police officers assume a general duty to protect members of the public whenever they respond to a call for assistance.

7

None of these circumstances apply to Mr. Yount's death. Police officers made no representations, much less misrepresentations, that led Mr. Yount to rely on them. The officers did not place Mr. Yount in harm's way, having played no role in his decision to step out onto the ledge and to ultimately jump. Nor did the officers lull Mr. Yount into any sense of security, only to withdraw those measures. The undisputed evidence shows that officers arrived at the scene and took steps to make the area safe for bystanders who could be injured if Mr. Yount were to jump. A specially trained negotiator was dispatched to try to dissuade Mr. Yount from killing himself, but Mr. Yount jumped before the negotiator was able to reach him. These facts are insufficient as a matter of law to create a special relationship giving rise to a legal duty.

We reject appellant's suggestion that a special relationship existed because the officers' presence at the scene deterred other bystanders from helping Mr. Yount. "A long line of cases has held that a special relationship with a person in peril is not established simply because police officers responded to a call for assistance and took some action at the scene. [Citations.] Responding to a citizen's call for assistance is 'basic to police work and not "special" to a particular individual.' " (*Adams*, *supra*, 68 Cal.App.4th at p. 279.)

Nor do we agree that a reasonable trier of fact could conclude the police officers on the scene "hurled insults" at Mr. Yount, increasing the risk of harm by contributing to his decision to jump. The only fact cited in support of this assertion was that at one point Officer Perez yelled up at Mr. Yount, "Get back inside your apartment, you fool! Get back inside!" This stray remark—by which Perez urged Mr. Yount *not* to jump—was part of a sea of voices, some supportive, some not, that may or may not have been heard or understood by Mr. Yount. Perez's use of the word "fool," by itself, cannot be said to have increased Mr. Yount's peril in a manner that gives rise to a special duty of care.[4]

Even assuming it would have been advisable for Officer Perez to address Mr. Yount more tactfully, "no authority exists imposing a duty where police conduct only

---

[4] Mr. Yount jumped several minutes after Officer Perez made this statement.

incrementally increased the risk to which the injured person was already exposed. In volatile situations, one can always argue that the arrival of police officers caused an incremental increase in tension at the scene, and thus increased the risk of injury occurring. Yet, despite the fact that basic police work often involves anxiety-producing conduct such as the display of weapons, the shining of flashlights, or the shouting of orders, the social utility of involving police in suicidal standoffs weighs against the imposition of liability. To expansively construe the special relationship doctrine to encompass such incremental increases in a preexisting risk would eviscerate our Supreme Court's adoption in *Williams*, *supra*, 34 Cal.3d at page 23, of the public duty rule, which protects police officers from the burden of assuming greater obligations to others by virtue of their employment." (*Adams*, *supra*, 68 Cal.App.4th at pp. 284-285.)

This case is very different from *Lugtu*, *supra*, 26 Cal.4th 703, on which appellant relies. In *Lugtu*, the plaintiffs were injured when another car struck their vehicle during a traffic stop effected on the median of the highway rather than on the right-hand side of the road. (*Id*. at pp. 716-718.) The court concluded the officer had a duty to exercise reasonable care for the safety of persons he stopped for traffic violations, and a triable issue of fact existed as to whether the location of the stop exposed the occupants to an unreasonable risk of harm. (*Id*. at pp. 722-724.) Here, the officers on the scene did not place Mr. Yount in peril, direct him to a location that increased his risk of harm, or exercise a degree of control over the situation that was in any way comparable to the officer in *Lugtu*.

Because we conclude there was no duty of care and that consequently appellant lacked an essential precondition for a wrongful death claim founded on negligence, we need not address whether the element of proximate cause presents a triable question of fact in this case. (See *Hooks v. Southern Cal. Permanente Medical Group* (1980) 107 Cal.App.3d 435, 448.)

III. *Appellant Did Not File a Government Tort Claim for the Bane Act and Intentional Infliction of Emotional Distress Claims*

The trial court granted summary judgment on the Bane Act and intentional infliction of emotional distress claims because they were not included in the government tort claim presented to the City. We reject appellant's argument that she complied with the claim filing requirement.

The Government Claims Act, formerly known as the Tort Claims Act, provides that an injured party may not bring suit against a public entity unless a claim is presented to and rejected by the entity within the time provided by statute. (Gov. Code, §§ 900 et seq., 945.4; *Nelson v. County of Los Angeles* (2003) 113 Cal.App.4th 783, 796 (*Nelson*).) The purpose of this rule is to give the public entity sufficient information to adequately investigate the claim and to reach a settlement, if appropriate, without the expense of litigation. (*Nelson*, at p. 797.) Compliance with the claim presentation requirement is a condition precedent to a civil suit for damages. (*Castaneda v. Department of Corrections & Rehabilitation* (2013) 212 Cal.App.4th 1051, 1061 (*Castaneda*).)

Where two or more persons have suffered separate and distinct injuries from the same act or omission, they must each present a claim and neither can rely on the claim presented by the other. (*Castaneda*, *supra*, 212 Cal.App.4th at p. 1062; *Nelson*, *supra*, 113 Cal.App.4th at p. 796.) "This rule applies where different claimants are alleging survivor theories and wrongful death theories of liability arising from the same transaction." (*Castaneda*, at p. 1062; *Nelson*, at pp. 796-797.) "It has long been the law in California that '[a]n action for wrongful death is wholly distinct from an action by the decedent, in his lifetime, for the injuries which ultimately cause[d] his death [citation]." (*Castaneda*, at p. 1063.)

Appellant's cause of action for wrongful death was brought in her individual capacity as an heir of her son. The causes of action for violation of the Bane Act and intentional infliction of emotional distress were, by contrast, predicated on the alleged violation of Mr. Yount's civil rights and the alleged emotional distress suffered by Mr.

Yount before his death. (See *Bay Area Rapid Transit Dist. v. Superior Court* (1995) 38 Cal.App.4th 141, 144 (*BART*) [Bane Act provides a personal cause of action for the victim of a hate crime and "is simply not a wrongful death statute"].) The only government tort claim filed in this case was that presented by appellant on July 26, 2013, for "wrongful death." The claim made no mention of civil rights violations or emotional distress suffered by Mr. Yount before he died. The City was not presented with a government tort claim on behalf of Mr. Yount or his estate, and summary judgment was properly granted as to the causes of action alleging violations of the Bane Act and intentional infliction of emotional distress. (*Castaneda*, *supra*, 212 Cal.App.4th at p. 1062; *Nelson*, *supra*, 113 Cal.App.4th at pp. 796-797.)

IV. *The Bane Act and Intentional Infliction of Emotional Distress Claims Fail on Their Merits*

Even if we were to agree with appellant that her government tort claim could be construed to encompass her Bane Act and intentional infliction of emotional distress claims, we agree with the trial court that on the merits, the City is entitled to judgment as a matter of law.

The Bane Act (Civ. Code, § 52.1) was enacted in response to an " 'alarming increase in hate crimes.' " (*BART*, *supra*, 38 Cal.App.4th at p. 144.) It allows an individual to bring a private action against persons whose conduct "interferes by threat, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." (Civ. Code, § 52.1, subd. (a).) The undisputed facts in this case show the following: that the San Francisco Police Department received a 911 call regarding a potential suicide; that several officers, including Officer Perez, were dispatched to the scene, where they found Mr. Yount standing on the ledge; that Perez took steps to secure the area and repeatedly yelled at Mr. Yount to go inside, at one point yelling, "Get back inside your apartment, you fool! Get back inside!"; and that an officer trained in

11

negotiating with persons threatening suicide was sent to the scene but was unable to speak with Mr. Yount before he jumped. None of these actions amounted to a threat, intimidation or coercion, and none interfered with any identified constitutional or legal right possessed by Mr. Yount.

As for intentional infliction of emotional distress, we agree with the City that the claim is barred by Code of Civil Procedure section 377.34, which provides: "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable . . . do not include damages for pain, suffering, or disfigurement." Because the only damage allegedly suffered by Mr. Yount in the claim for intentional infliction of emotional distress was emotional distress, there is no compensable injury. (*Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 530 [cause of action alleging intentional infliction of emotional distress of decedent barred by Code Civ. Proc., § 377.34; possibility of recovering punitive damages did not support cause of action because there must be an award of actual damages to support an award of punitive damages].)

Moreover, a cause of action for intentional infliction of emotional distress requires proof of "extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 494.) Conduct is "outrageous" when it is "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (See *Kelly v. The Conco Companies* (2011) 196 Cal.App.4th 191, 215, internal quotation marks omitted.) While the undisputed evidence showed that Officer Perez once used the word "fool" while urging Mr. Yount to go inside his apartment, insulting language, without more, is not ordinarily outrageous conduct, and the undisputed evidence does not support an inference that Perez intended the word to cause emotional distress or acted in reckless disregard of that possibility. (*Ibid.*)

Summary judgment was appropriately granted for the reasons discussed. It is unnecessary to consider the City's additional claims that issues necessarily decided in the

federal case filed by appellant should operate as collateral estoppel in this case, or that the City is immune from liability under Government Code section 845.

## DISPOSITION

The summary judgment is affirmed.  The City is entitled to its ordinary costs on appeal.

_____
NEEDHAM, J.

We concur.

_____
JONES, P.J.

_____
BRUINIERS, J.