Filed 3/30/15  Rio Vista Landscape Maintenace Assn. v. City of Oceanside CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RIO VISTA LANDSCAPE MAINTENANCE ASSOCIATION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>CITY OF OCEANSIDE,<br><br>Defendant and Respondent. | D065251<br><br><br>(Super. Ct. No. 37-2012-00054678-CU-PT-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Connolly Law Office and Christopher J. Connolly for Plaintiff and Appellant.

John Mullen, City Attorney, and Anne M. Perrigo, Deputy City Attorney, for Defendants and Respondents.

For many years, a homeowners association (Rio Vista Landscape Maintenance Association (Rio Vista Association)) performed landscape maintenance on a public street median near the residential development.  In July 2012, Rio Vista Association sued the

City of Oceanside (City) seeking a declaration that it does not owe (and has never owed) the City a duty to maintain the public median, and seeking to invalidate an administrative decision upholding a $200 citation for Rio Vista Association's failure to perform the maintenance work.

The court granted summary judgment in the City's favor, finding the undisputed facts establish Rio Vista Association was required to maintain the median based on a condition imposed by the City when it approved the residential development in 1994. The court awarded $39,690 in attorney fees to the City. (Civ. Code, § 1717.)

On appeal, Rio Vista Association contends the court erred in determining its causes of action were unsupported as a matter of law. Rio Vista Association also challenges the attorney fees award. We reject these contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

To determine whether the court properly granted summary judgment, we first describe the applicable development documents and homeowner association rules that reflect Rio Vista Association's powers and obligations. We next describe the circumstances leading to Rio Vista Association's filing the complaint against the City. We then summarize the allegations in Rio Vista Association's complaint, the summary judgment proceedings, and the court's ruling.

A. *Documents Pertaining to Douglas Drive Median-Maintenance Obligation*

In September 1994, the Oceanside Planning Commission adopted a resolution (Resolution 94-P25) approving a development proposal and tentative map and other related documents for the construction of a 273-unit single-family residential subdivision

2

(Rio Vista) with certain conditions. The conditions included a requirement that the developer (Developer) dedicate and improve Douglas Drive, a four-lane major arterial road adjacent to the Rio Vista development. The Resolution also required the Developer to build "[a] raised landscaped concrete median . . . on Douglas Drive as determined by the City Engineer." Resolution 94-P25 additionally imposed two conditions requiring that the homeowners association maintain the "median landscaping" and that the Developer include this requirement in the development's CC&R's.

First, Condition No. 83 stated:

"The homeowners' Covenants, Conditions and Restrictions (C.C. & R's) shall provide for the maintenance of all common open space, *medians* and commonly owned fences and walls and adjacent parkways. The maintenance shall include normal care and irrigation of landscaping, repair and replacement of plant material and irrigation systems as necessary; and general cleanup of the landscaped and open area, parking lots and walkways. The C.C. & R's shall be subject to the review and approval of the City Attorney prior to the approval of the final map. The C.C. & R's are required to be recorded prior to or concurrently with the final map. Any amendments to the C.C. & R's in which the homeowner relinquishes his responsibility for the maintenance of any common open space shall not be permitted without the specific approval of the City Council of the City of Oceanside. Such a clause shall be a part of the C.C. & R's. *The C.C. & R's shall also contain provisions for the following*:

(a) Provisions regulating individual patio covers, room additions and other appurtenances.

(b) *Maintenance of median landscaping by the Homeowners' Association*." (Italics added.)

Second, Condition No. 85 stated:

"*All landscaping, fences, walls, etc. on the site, in medians, in public right-of-way and in any adjoining public parkways shall be*

3

*permanently maintained by the homeowners association.* The maintenance program shall include normal care and irrigation of the landscaping; repair and replacement of plant materials; irrigation systems as necessary; and general cleanup of the landscaped and open areas, parking areas and walkways, walls, fences, etc. *This condition shall be recorded with the covenant required by this Resolution.*"  (Italics added.)

Five years later, in January 1999, the Oceanside city council approved the Rio Vista project, and confirmed that the Developer substantially satisfied all tentative map requirements and conditions set forth in Resolution 94-P25.  Shortly after, the landscape plans for the Rio Vista development were signed by the Developer/Owner and the City planning director.  These plans include a statement that:  "The Developer is required to maintain all common landscaped areas (*including medians and parkway on Douglas Drive*) for one (1) year or until City acceptance of landscape improvements, whereupon the project HOA accepts maintenance responsibility."  (Italics added.)

The next month, on February 17, 1999, a three-page Declaration of Covenants, Conditions & Restrictions (CC&R I), signed by the Developer, was recorded.  This CC&R I document states that the Rio Vista development is "restricted by" the City's development approval conditions, and specifically identified Resolution 94-P25 as one of the documents containing those conditions.[1]

The CC&R I further states the "OWNER intends to restrict the PROPERTY in accordance with the conditions of the Resolutions [defined to include Resolution 94-

---

[1]     Although the CC&R I document identifies Resolution 94-P25 as a controlling planning document, it also contains two references to Resolution "97-P25."  We agree with the City that the references to Resolution 97-P25 appear to have been a clerical error and were intended to refer to Resolution 94-P25.

4

P25], as required by the [City]" and that "This Declaration shall constitute covenants running with the land and *shall be binding on and for the benefit of OWNER, its successors, assigns, and all subsequent owners of the PROPERTY, together with their grantees, successors, . . . administrators, devisees, and assigns.*" (Italics added.) The CC&R I document further gave the City a "right" to enforce the CC&R's and to recover attorney fees incurred in any enforcement action. The final substantive sentence of the CC&R I states: "This Declaration shall not be modified, removed or released without the prior written consent of the City of Oceanside."

The same day that this CC&R I document was recorded, the approved Final Map for the Rio Vista project was recorded. This Map included a statement that the "C.C.&R's AS REQUIRED BY THE CITY OF OCEANSIDE PLANNING COMMISSION RESOLUTION NO. 94-P25 APPROVING TENTATIVE MAP . . . AND DEVELOPMENT PLAN HAVE BEEN RECORDED . . . ."

Two days later, on February 19, 1999, the Developer recorded a more comprehensive declaration of Covenants, Conditions and Restrictions for Rio Vista (CC&R II), reconfirming the binding nature of the City's development conditions and containing the detailed rules governing the homeowners association. This document provided Rio Vista Association with the power to impose assessments to promote the management of the common areas or "*in furtherance of any other duty or power of the Association.*" (Italics added.) The CC&R II also defined "common expenses" to include "the costs incurred in the discharge of any duties or powers of the Association" and gave

5

Rio Vista Association the authority to "enforce the provisions of the [CC&R II] . . . by appropriate means and carry out the obligations of the Association hereunder."

The CC&R II also contains a separate section entitled "<u>CITY REQUIREMENTS</u>." That section provided in part:

> "<u>Section 15.1 - No Limitations.</u>  Neither the Declaration, nor any contract of sale, lease or other written document nor any other means or method shall be established . . . which would operate, directly or indirectly, to prevent or preclude any other Owners or any person, individual, or entity from complying with all applicable provisions of the Tentative Map, the Final Map and other City ordinances, rules, policies or regulations.
>
> [¶] . . . [¶]
>
> "<u>Section 15.3 — Modification</u>.  None of the terms of the Declaration shall be deleted or modified without the consent of the City Attorney.  Further, the City shall have the right but not the obligation to enforce any of the above provisions and that in the event the City pursues legal action to enforce any of its rights, the City shall be entitled to reasonable attorneys' fees.
>
> "<u>Section 15.4 — Receipt of Homeowner Documents.</u>  Prior to the transfer of ownership to each prospective and actual buyer, of any Lot or Lot(s), Declarant and Owner(s) shall provide a written copy of the Declaration, applications, staff report *and resolutions* for the Neighborhood to the new Owner.  This notification's provision shall run with the life of the project . . . .
>
> [¶] . . . [¶]
>
> "<u>Section 15.6 — Compliance.</u>  *Neighborhood is restricted by Development Plan . . . and Tentative Map . . . approved by the City of Oceanside pursuant to Planning Commission Resolution No. 94-P25*, hereinafter collectively referred to as the 'Resolution'.  This [section] is in accordance with Government Code Section 66411.1 of the Subdivision Map Act and the Resolution.  Declarant intends to restrict the Neighborhood in accordance with the conditions of the Resolutions, as required by the Oceanside City Council, Community Development Commission and Planning Commission.

6

"The entire list of conditions applicable to the Neighborhood may be reviewed in Resolution No. 94-P25. Copies of [the] Resolution are on file with the Planning Department of the City of Oceanside." (Italics added.)

B. *Circumstances Leading to the Dispute*

Since at least 2004 until mid-2011, Rio Vista Association acknowledged its duty to maintain the landscaping on the Douglas Drive median and fully performed this work.

In 2004, Rio Vista Association entered into an agreement to share costs for the median maintenance with a developer (Standard Pacific) that was building a nearby residential development (Mission Wells) along Douglas Drive. In the agreement, both parties reaffirmed their legal obligations to maintain the public median. In this regard, Rio Vista Association stated:

> "*Pursuant to the conditions of approval for the Rio Vista Project*, the Rio Vista Association (as successor-in-interest to the developer of the Rio Vista Project) *is responsible for the maintenance of nine (9) existing landscape medians located within the public right-of-way on Douglas Drive*. The landscaping in the existing medians is currently served by irrigation facilities (Irrigation Facilities) connected to the irrigation system serving the broader Rio Vista Project. . . ." (Italics added.)

Standard Pacific also confirmed its responsibility for this maintenance and stated it intended to build certain improvements to the median. The parties agreed that after these improvements were completed, Standard Pacific would be responsible for 60.9 percent of the median-maintenance costs and Rio Vista Association would be responsible for 39.1 percent of the costs.

After signing this cost-sharing agreement, Rio Vista Association (apparently with Mission Wells's contributions) continued to maintain the Douglas Drive median for the

7

next seven years. However, in mid-June 2011, Rio Vista Association made a decision it was not (and had never been) obligated to perform this maintenance and terminated this work. The City responded that Rio Vista Association's decision violated "the specific requirements attached to your development approvals" and gave the Association two weeks to correct the problem.

Rio Vista Association's governing board (Board) then notified the City it did not believe it was obligated to maintain the median because it was responsible for maintaining only common areas of the development, and the City-owned Douglas Road median was not part of the common area as defined in the CC&R's. The Board also stated the City's conditions of approval contained in Resolution 94-P25 did not govern Rio Vista Association, and instead was merely a contract between the City and the Developer.

In February 2012, the City issued a $100 administrative citation to Rio Vista Association, and served the citation on "Patricia J Koerv," who is the Association's designated agent for service of process and its president and property manager. The citation states Rio Vista Association violated Resolution 94-P25's median-maintenance requirement and Oceanside City Code sections prohibiting public nuisances. (Oceanside Mun. Code, § 17.3(d).)[2]

---

2      Oceanside Municipal Code section 17.3(d) states: "A public nuisance . . . . includes: [¶] . . . [t]he placement, maintenance, or existence of junk, garbage, rubbish, or nuisance vegetation in a manner which is offensive, unsightly, unsafe, unhealthy, a harborage for rodents or other vermin, an attractive nuisance to children, or in any other way detrimental to public health, safety, or welfare."

In March 2012, the City issued a second administrative citation imposing a $200 fine for the same alleged violations. This administrative citation was again served on Patricia Koerv.

Rio Vista Association appealed the $200 citation, and in May 2012, an administrative hearing was held on this challenge. The issue at the hearing was whether Rio Vista Association's failure to maintain the Douglas Drive median violated Resolution 94-P25 and/or Oceanside Municipal Code section 17.3(d). In support of their respective positions, the City and Rio Vista Association presented witness testimony and documentary evidence. At the conclusion of the hearing, the administrative hearing officer upheld the administrative citation.

## C. *Rio Vista Association's Complaint*

One month later, Rio Vista Association filed a complaint against the City, seeking: (1) declaratory relief that it has no continuing obligations regarding the Douglas Drive median; and (2) "de novo review" of its objections to the May 2012 administrative citation.[3] In support of both forms of relief, Rio Vista Association alleged that the Douglas Drive median is not part of its common area; Rio Vista Association does not have a private contract or a recorded easement with the City requiring that it maintain City property; and Rio Vista Association's governing documents do not authorize it to maintain City property outside the development's common areas. Rio Vista Association

---

3    Under Government Code section 53069.4, a party may seek de novo review in the superior court of an administrative fine imposed by a local agency. All further statutory references are to the Government Code unless otherwise specified.

9

also alleged the City improperly served the administrative citations on Patricia Koerv because she had no individual liability to the City for the claimed maintenance violations.

D. *Summary Judgment Motion*

The City moved for summary judgment, arguing the undisputed facts show Rio Vista Association cannot prevail as a matter of law on its claims because: (1) the claims were untimely under section 66499.37 as the claims reflect challenges to the legality and validity of a 1994 restriction imposed under the City's Subdivision Map Act authority; (2) Resolution 94-P25's requirement that Rio Vista Association maintain the Douglas Drive median is a valid condition running with the land and is binding on Rio Vista Association; and (3) the service of the citations on Patricia Koerv was proper.

In support, the City presented the various City and CC&R documents summarized above. The City also presented the declaration of Amy Fousekis Wolfe, the City's principal planner, who authenticated the City documents and stated that the raised median on Douglas Drive was the only "median" improvement within the Rio Vista development project. Wolfe also stated that Resolution 94-P25's imposition of a permanent maintenance obligation "is typical for a project of this type as a means of offsetting long-term city street maintenance costs, which are generally increased by new development projects such as Rio Vista. The alternative would be the establishment of a new — or annexation to an existing — City maintenance assessment district where the City would perform the maintenance funded by assessments against the homeowners. In either case, the homeowners within the project boundaries would be responsible for the costs of said maintenance."

10

The City additionally presented the declaration of a code enforcement officer who stated that in February and March 2012 she observed "a considerable amount of accumulation of trash, debris, junk, weeds, etc. on the [Douglas Drive] medians" and therefore served administrative citations on Patricia Koerv "as the property manager for" Rio Vista Association.

E. *Opposition to Summary Judgment*

In opposing the summary judgment motion, Rio Vista Association argued the lawsuit was timely filed because it was filed one month after the City imposed administrative fines for its failure to maintain the Douglas Drive median. On the merits, Rio Vista Association argued questions of fact exist on several issues, including: (1) whether Resolution 94-P25 adequately identified the *Douglas Drive* median as the median requiring maintenance; (2) whether Resolution 94-P25's conditions are enforceable covenants running with the land; (3) whether Rio Vista Association has the authority to comply with the median-maintenance condition; (4) whether the current maintenance obligations are beyond the scope of the original covenant; and (5) whether the City properly served Rio Vista Association with the administrative citations.

In support of these arguments, Rio Vista Association submitted a copy of the recorded Final Map, which did not specifically identify the Douglas Drive median maintenance requirement, but stated that the CC&R's "required by" Resolution 94-P25 approving the tentative map "have been recorded." (Capitalization omitted.) Rio Vista Association also requested the court take judicial notice of Oceanside Municipal Code sections 17.1 through 17.15.1 which govern the City's authority to abate nuisances, and

11

provide that the enforcement officer shall issue a notice to the "property owner" or to the person "in actual or apparent possession and control of the property." (Oceanside Mun. Code, § 17.6, subd. (1).)

Rio Vista Association further submitted the declaration of Alan Koerv, a Rio Vista Association director and the husband of the Association's president and property manager Patricia Koerv. Mr. Koerv stated Rio Vista Association has no authority under the governing CC&R's to perform the Douglas Drive median maintenance obligations because the median was City-owned property and was not "Common Area[ ]" property under its control. Mr. Koerv also asserted that "Contrary to the cynical misstatements of the CITY in this case, Res. 94-P25 is *not* a governing document for Plaintiff [Rio Vista Association]." As discussed more fully below, Mr. Koerv additionally stated that Rio Vista Association's median-maintenance obligations have "significantly changed over the subsequent years" because of "additional development and City mandates."

Regarding the administrative fine, Rio Vista Association argued the fine is improper because it had no underlying obligation to maintain the Douglas Drive median *and* because the administrative citation was served on Mrs. Koerv, who was not a proper party to be served. In support, Rio Vista Association admitted Mrs. Koerv is its "President and Director" and the "agent for service of process," but argued the citation should have been served on the Rio Vista Association's "board of directors," rather than on an individual officer or director.

12

Both parties asserted numerous evidentiary objections. The court sustained the City's objections to certain evidence items, including to most of Mr. Koerv's declaration, and overruled many of the parties' other objections.

### F. *Summary Judgment Ruling*

After considering the parties' written submissions and arguments, the court granted summary judgment. The court stated Rio Vista Association's claims seek to "invalidate an administrative decision made in 1994," and therefore they are "barred by the 90-day statute of limitations in . . . section 66499.37." The court additionally found the claims failed on their merits, stating the City "met its burden of showing . . . [it] is entitled to a judgment as a matter of law as the evidence demonstrates the approval conditions in Planning Res. 94-P25 restrict the Plaintiff as a covenant running with the land which exists as a matter of law . . . ."

## DISCUSSION

### I. *Summary Judgment Review Standards*

A summary judgment motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)

13

The issues on a summary judgment motion are framed by the pleadings. (*Sweat v. Hollister* (1995) 37 Cal.App.4th 603, 607.) A moving defendant has the initial burden to show one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to the claim. (*Garcia v. W&W Community Development, Inc.* (2010) 186 Cal.App.4th 1038, 1041.) If the defendant meets this burden, the burden shifts to the plaintiff to show the existence of a triable issue. (*Ibid.*) The plaintiff may not rely upon the pleading allegations but instead must set forth *specific facts* based on *admissible evidence* showing a triable issue of material fact on the cause of action. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477; *Trujillo v. First American Registry, Inc.* (2007) 157 Cal.App.4th 628, 635.)

"Because a summary judgment denies the adversary party a trial, [the motion] should be granted with caution." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305.) We consider all of the evidence and inferences reasonably drawn from the evidence, and view the evidence in the light most favorable to the opposing party. (*Aguilar, supra*, 25 Cal.4th at p. 843.) We review a summary judgment de novo and are not bound by the trial court's stated reasons. (*Blue Shield of California Life & Health Ins. Co. v. Superior Court* (2011) 192 Cal.App.4th 727, 732.)

## II. *Subdivision Map Act*

The Subdivision Map Act "generally requires all subdividers of property to design their subdivisions in conformity with applicable general and specific plans and to comply with all of the conditions of applicable local ordinances." (*Gardner v. County of Sonoma* (2003) 29 Cal.4th 990, 997.) "By generally requiring local review and approval of all

14

proposed subdivisions, the Act aims to 'control the design of subdivisions for the benefit of adjacent landowners, prospective purchasers and the public in general.' [Citation.]" (*Ibid.*) " '[T]he Subdivision Map Act constitutes the major land use permit control vehicle for urban planning and environmental protection. [Citations.]' [Citations.]" (*Van't Rood v. County of Santa Clara* (2003) 113 Cal.App.4th 549, 564.)

To effectuate these purposes, the Subdivision Map Act authorizes local agencies (including cities) to impose conditions of approval for tentative subdivision maps, i.e., requiring the developer to agree to certain conditions before the public entity will approve a developer's proposed development. (§ 66411.) The local agency has broad authority to impose any condition that encourages and facilitates orderly community planning and/or protects the public health, safety and welfare. (See *Associated Home Builders, etc. Inc. v. City of Walnut Creek* (1971) 4 Cal.3d 633, 638; *Ayres v. City Council of Los Angeles* (1949) 34 Cal.2d 31, 37-38; *Gomes v. County of Mendocino* (1995) 37 Cal.App.4th 977, 985.) If the developer/subdivider has complied with the terms and conditions attached to the tentative map, the local agency must approve the final map. (§ 66474.1.)

The Subdivision Map Act provides that an action to void or challenge a decision imposing a condition to the approval of a tentative or final map must be filed "within 90 days after the date of the decision. Thereafter all persons are barred from any action or proceeding *or any defense of invalidity or unreasonableness of the decision or of the proceedings, acts, or determinations*." (§ 66499.37, italics added.)

15

This 90-day limitations period must be strictly construed. (*Hensler v. City of Glendale* (1994) 8 Cal.4th 1, 27-28; see *Aiuto v. City & County of San Francisco* (2011) 201 Cal.App.4th 1347, 1356-1361 (*Aiuto*).) Section 66499.37 " 'manifests a legislative purpose that a decision . . . approving a subdivision map and attaching a condition thereto, shall be judicially attacked within [90 days], or not at all.' " (*Hensler, supra*, at p. 27, italics omitted.) The 90-day limitations period governs "whatever wrong was claimed in the complaint or whatever relief was sought [if] the gravamen of the complaint [is] an attack on a subdivision-related decision under the [Subdivision Map Act]." (*Aiuto, supra*, 201 Cal.App.4th at p. 1358.)

### III. *Declaratory Relief*

#### A. *City Satisfied Summary Judgment Burden To Show Enforceable Maintenance Duty*

Rio Vista Association contends the court erred in granting summary judgment on its declaratory relief claim. In this claim, Rio Vista Association sought an order that it has no legal or contractual responsibility or authority to maintain the Douglas Drive median. In moving for summary judgment, the City argued Rio Vista Association could not recover on this claim because its obligation to maintain the median was an enforceable City-imposed condition under the City's Subdivision Map Act authority and Rio Vista Association's challenge to the condition was untimely and factually and legally unsupported. It further argued that the applicable CC&R's authorize (if not mandate) Rio Vista Association to comply with this City-imposed obligation.

In support of these arguments, the City presented evidence showing that as part of its Subdivision Map Act authority, it imposed conditions for approval of the Rio Vista

16

subdivision tentative map and these conditions are contained in Resolution 94-P25. One of those conditions required the Developer to dedicate Douglas Drive and construct a median on this public street. Conditions 83 and 85 of Resolution 94-P25 require the Developer to record CC&R's requiring its successor homeowners association to maintain the landscape on the "median." The City produced evidence showing the Douglas Drive median was the only median in the project area, and therefore that Resolution 94-P25's median-maintenance requirement necessarily referred to the Douglas Drive median. This inference was further supported by (1) the Developer's admission in the 1999 landscape plans that its successor homeowners association would have a continuing responsibility to maintain the Douglas Drive median[4]; (2) Rio Vista Association's conduct from at least 2004 to 2011 in maintaining the Douglas Drive median; and (3) Rio Vista Association's *express admission* in 2004 that "[p]ursuant to [the City's] conditions of approval" it was "responsible for the maintenance" of the landscape medians "located within the public right-of-way on Douglas Drive."

The City further presented copies of the two CC&R's for the Rio Vista development, which expressly incorporate Resolution 94-P25's conditions and provide that those conditions run with the land, are binding obligations on Rio Vista Association, and are enforceable by the City. The CC&R II also contained a provision that Rio Vista Association has "the duty and obligation" to "enforce the provisions of this Declaration . .

---

[4]     The trial court overruled Rio Vista Association's evidentiary objections to these plans. Rio Vista Association does not challenge the court's ruling in its opening brief, and we are therefore bound by the court's ruling. (See *Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074.)

17

. by appropriate means and carry out the obligations of the Association hereunder" including to "maintain and otherwise manage . . . all property . . . which the Association is obligated to repair or maintain pursuant to this Declaration . . . ."

These undisputed facts showed Resolution 94-P25 contained a condition that the Developer (and/or its successor homeowners association) permanently maintain the Douglas Drive median; the CC&R's incorporated this condition and provided Rio Vista Association with the authority (and duty) to comply with the condition; and any challenges to the validity of the Resolution 94-P25 conditions were untimely. On this record, the City met its burden to show Rio Vista Association could not prevail on its declaratory relief as a matter of law.

B. *Rio Vista Association Did Not Meet Burden To Show Disputed Factual Questions*

Once the City met its summary judgment burden on the declaratory relief claim, the burden shifted to Rio Vista Association to show a triable issue of fact on its allegations that it owed no duty, and/or had no power, to maintain the Douglas Drive median. Rio Vista Association raises numerous contentions in an attempt to show it met its burden. As explained below, we find these contentions lack merit.

1. *Challenge to Validity of Resolution 94-P25 Is Time-Barred*

Rio Vista Association asserts several arguments that challenge the *validity* of the median-maintenance condition. For example, Rio Vista Association contends, the Douglas Drive median maintenance condition is a "Facially Invalid Developer's Fee." (See § 66000, subd. (b).) Rio Vista Association additionally argues the City had no authority to impose a "permanent" obligation on a homeowners association to perform

18

acts that benefit property outside the development. These challenges are time-barred because they challenge the *decision* to condition the development approval on the agreement to permanently maintain the median. (§ 66499.37.)

We reject Rio Vista Association's contention that section 66499.37's 90-day limitations rule does not bar these challenges because statutes of limitations generally do not bar defensive claims or declaratory relief claims seeking to invalidate a contractual or legal obligation. (See *Styne v. Stevens* (2001) 26 Cal.4th 42, 51-53.) This general rule does not apply if the governing statute includes a limitations period for affirmative *and* defensive claims. (*City of Saratoga v. Hinz* (2004) 115 Cal.App.4th 1202, 1216-1218; see *Styne, supra*, 26 Cal.4th at p. 53.) This is the case here. Section 66499.37 expressly encompasses defensive claims within its reach, stating that after the 90-day period, "all persons are barred from any action or proceeding *or any defense of invalidity or unreasonableness of the decision or of the proceedings, acts, or determinations*." (Italics added.)

We also find unavailing Rio Vista Association's argument that the statute of limitations did not accrue until the City "demanded performance" by issuing administrative citations. In support of this argument, Rio Vista Association cites *Cutujian v. Benedict Hills Estates Assn.* (1996) 41 Cal.App.4th 1379. The *Cutujian* court considered when the applicable four-year statute of limitations commenced on a claim for enforcement of a covenant to perform an affirmative obligation (the obligation to repair slope areas in a development) in recorded CC&R's under which the affirmative obligation arose only when " '*necessary or appropriate*.' " (*Id.* at p. 1387.) Interpreting this

particular language, the court found the statute of limitations to enforce the obligation did not begin to run until the plaintiff demanded that the association fulfill this obligation, reasoning that the obligation did not commence *until* the repairs became necessary. (*Id.* at pp. 1384-1389.)

This holding on the delayed accrual for enforcing an open-ended CC&R's obligation has never been expanded beyond its narrow facts and does not apply to the circumstances here where the maintenance obligation began upon the approval of the final map and recording of the CC&R's. (See *Crestmar Owners Assn. v. Stapakis* (2007) 157 Cal.App.4th 1223, 1227-1228.)

Rio Vista Association additionally argues the City cannot prevail on its section 66499.37 limitations defense because it did not specifically identify this code section when alleging the defense in its answer. By failing to raise the issue below, Rio Vista Association forfeited its contention on appeal. (See *Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1381.) Rio Vista Association had the full opportunity to counter the City's arguments based on section 66499.37 in the summary judgment proceedings, and there is no showing it was prejudiced by the lack of specificity in the City's answer.

2. *Undisputed Facts Show Maintenance Condition Is Binding on Rio Vista Association*

Rio Vista Association alternatively contends it is not seeking to invalidate a development condition and instead is merely seeking an order that the condition is not binding on a successor in interest. Even assuming the claim was timely, the argument fails on its merits.

20

Rio Vista Association's contention that the Douglas Drive median-maintenance condition does not bind successors is grounded on its assertion that the condition did not satisfy the "strict requirements" of Civil Code sections 1461, 1462, and 1468.  However, these code sections do not govern the determination of whether a public entity's declaration of restrictions is binding on successors in interest.  (See *Ojavan Investors, Inc. v. California Coastal Com.* (1994) 26 Cal.App.4th 516, 526 (*Ojavan*); see also *Scrogings v. Kovatch* (1976) 64 Cal.App.3d 54, 57-58.)  A public entity's development condition is generally binding as a matter of law on the developer's successors if the successors had actual or constructive notice of the condition.  (See *Ojavan, supra*, at pp. 526-527.)

In this case, Rio Vista Association had constructive notice of the contents of Resolution 94-P25 (including the median-maintenance condition) through the recording of the tentative and final maps and the recorded CC&R documents that incorporate Resolution 94-P25 into the binding provisions.  Moreover, Rio Vista Association acknowledged and accepted the obligation by performing the work for at least seven years and by expressly admitting the binding obligation in its cost-sharing agreement with Mission Wells's developer.

To the extent Rio Vista Association is contending the maintenance condition is not binding on it because Resolution 94-P25 did not *specifically* identify the median as the "Douglas Drive median," the City presented evidence that the only median improvement included in the development plans was the Douglas Drive median, and that all parties (including the Developer and Rio Vista Association) expressed the understanding that

21

this condition referred to the Douglas Drive median. Rio Vista Association did not present any contrary evidence. On this record, the only reasonable inference is that Resolution 94-P25's median-maintenance requirement concerned the Douglas Drive median.

The waiver doctrine also precludes Rio Vista Association's contention. The Developer (Rio Vista Association's predecessor) specifically agreed to the median-maintenance condition in exchange for the benefits afforded by the City's issuance of the tentative and final maps, which included the development and sale of the homes in the residential subdivision. By accepting these benefits in exchange for its agreement to be bound by the required restrictions, the Developer could not transfer or assign to Rio Vista Association any legal rights greater than it possessed. (See *Ojavan, supra*, 26 Cal.App.4th at pp. 527-528; *Rossco Holdings Inc. v. State of California* (1989) 212 Cal.App.3d 642, 654-655.) Rio Vista Association obtained rights to the property with the same limitations and restrictions that bound its predecessor, and waived its right to challenge the binding nature of those conditions.

3. *Rio Vista Association's Authority To Comply with Median-Maintenance Condition*

Rio Vista Association next contends that even if the Douglas Drive median condition is binding, it has no authority to comply with the condition because the governing CC&R's limit its authority to actions that benefit common area property within the Rio Vista development.

The argument is factually unsupported. As discussed above, the CC&R I specifically incorporates all of the development restrictions contained in Resolution 94-

22

P25.  The CC&R II likewise incorporates the City's conditions for approving the tentative map, and provides that the property is restricted by these conditions, including those specifically set forth in Resolution 94-P25.  The CC&R II prohibits any party from restricting the homeowners association "from complying with all applicable provisions of the Tentative Map, the Final Map and other City ordinances, rules, policies or regulations."  CC&R II further states that Rio Vista Association "shall have the duty and obligation" to "enforce the provisions of this Declaration . . . by appropriate means and carry out the obligations of the Association hereunder."  The CC&R II additionally provides that Rio Vista Association may assess its members for promoting the management of common areas, *and also "in furtherance of any other duty or power of the Association.*"  (Italics added.)

Under these provisions, the applicable CC&R's provide Rio Vista Association with the authority (and the duty) to comply with the Douglas Drive median maintenance condition.

We also reject Rio Vista Association's contention the City lacks standing to enforce the conditions contained in Resolution 94-P25.  Both recorded CC&R's state the City retains the right to enforce violations of the development conditions, including those contained in Resolution 94-P25.

4. *Challenges to Scope of Median-Maintenance Obligation*

Rio Vista Association additionally contends the Douglas Drive median has "doubled in size" since its original construction and therefore there was a triable issue of

23

fact regarding the *scope* of its continuing maintenance obligation. The argument lacks merit.

First, this change-in-scope claim is not alleged in Rio Vista Association's complaint. The complaint was directed solely at challenging the validity of the condition and did not allege the obligation was unenforceable because it had increased in scope. " 'The function of the pleadings in a motion for summary judgment is to delimit the scope of the issues' " and to frame "the outer measure of materiality in a summary judgment proceeding." (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381.) The complaint " 'set[s] the boundaries of the issues to be resolved at summary judgment.' [Citations.]" (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250.) A moving defendant's burden requires that it negate only the plaintiff's theories of liability *as alleged in the complaint*, and the defendant need not refute liability on some theoretical possibility not included in the pleadings. (*Id.* at p. 1254; *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 499.)

Additionally, even assuming Rio Vista Association had adequately pled this claim, Rio Vista Association did not submit any admissible evidence showing its median-maintenance responsibilities have materially changed over the years. In support of this assertion, Rio Vista Association relies solely on a paragraph contained in the declaration of Mr. Koerv, stating: "It is also important to note that the size, dimensions and maintenance requirements of the Douglas Drive median, located on City property, significantly changed over the subsequent years, due to additional development, and City

24

mandates.  The median on Douglas Drive . . . has approximately doubled in size since the original construction in the early 2000's."

This factual assertion is not properly before us.  The trial court sustained City's evidentiary objections to this portion of Mr. Koerv's declaration, and Rio Vista Association does not challenge the court's evidentiary ruling.  Accordingly, we must presume the court's evidentiary ruling was correct and disregard this portion of Koerv's declaration.  (See *Salas v. Department of Transportation, supra*, 198 Cal.App.4th at p. 1074; *Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1195-1196; *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 140.)

### 5.  *Adjacent Residential Development*

Rio Vista Association also contends it raised a triable issue of fact by presenting evidence regarding the median maintenance obligations of the adjacent residential development (Mission Wells).  The evidence showed that Mission Wells had similar responsibility for maintaining the Douglas Drive median, and its developer (Standard Pacific) intended to make some improvements to the Douglas Drive median.  The evidence also showed that in 2004, the Rio Vista Association and Standard Pacific entered into a written contract in which both parties acknowledged their median-maintenance obligations to the City and agreed to share the costs to satisfy these obligations.

These facts do not show the Resolution 94-P25 median-maintenance condition was no longer valid and enforceable against Rio Vista Association.  The fact that another

25

party has the same or similar development condition does not—without more—relieve the party of its legal obligation to fulfill the promised performance.

Additionally, contrary to Rio Vista Association's assertions, the fact the Mission Wells CC&R's specifically identified Douglas Drive when referring to the median maintenance requirement—whereas the Rio Vista CC&R's simply incorporated by reference the Resolution 94-P25 conditions—does not create a triable issue of material fact regarding the binding nature of the condition in this case. Another residential developer's decision to be more specific in its CC&R's does not mean that the Rio Vista CC&R's did not impart sufficient notice.

IV. *Cause of Action Challenging the Administrative Enforcement Order*

Rio Vista Association also contends the court erred in granting summary judgment because triable issues of fact existed on its cause of action challenging the administrative enforcement order imposing the $200 fine. Specifically, it argues the enforcement order was invalid because (1) Rio Vista Association had no obligation to maintain the Douglas Drive median; and (2) the City's service of the underlying citations violated applicable City rules.

For the reasons discussed above, we reject the first contention.

With respect to the second (service) issue, the City served Patricia Koerv with the administrative citations. The City presented evidence showing Rio Vista Association is the entity responsible for performing the median-maintenance obligations and Patricia Koerv is the Association's president and is also registered with the California Secretary of State as the agent for service for that entity. The citation was therefore properly served

26

on Patricia Koerv as Rio Vista Association's agent. Additionally, contrary to Rio Vista Association's assertions, there is no showing Patricia Koerv has been, or will be, held personally liable for the Association's citation fine, nor that she was a party to the litigation below or on appeal.

We likewise reject Rio Vista Association's contention that the citation violated the City's municipal code because Patricia Koerv does not "own, control or possess" the Douglas Drive median. Because the evidence showed Rio Vista Association was the entity responsible for performing the Douglas Drive median maintenance, the citation was appropriate. (See Oceanside Mun. Code, §§ 1.14 to 1.14.7.)[5]

### V. *New Trial Motion*

Rio Vista Association contends the court erred in denying its new trial motion because in its initial ruling the court failed to adequately address the fact that the adjacent residential development (Mission Wells) also had responsibilities to maintain the Douglas Drive median. We reject this contention.

There is nothing in the record suggesting the court did not consider this evidence in ruling on the City's summary judgment motion. Moreover, as discussed above, the evidence pertaining to Mission Wells's maintenance obligations was not a basis for denying the summary judgment motion. The fact that Mission Wells has equivalent obligations to maintain the median does not suggest that Rio Vista Association's duty to

---

[5]    Over Rio Vista Association's objections, we grant the City's request that we take judicial notice of the applicable Oceanside Municipal Code sections. (See Evid. Code, §§ 459, subd. (a), 452, subd. (b).)

perform has been eliminated and/or that the median-maintenance condition is no longer valid and enforceable against Rio Vista Association. Additionally, Rio Vista Association never sought any relief in its complaint based on Mission Wells's development obligations, and therefore these issues were not a proper basis for opposing the summary judgment or for moving for a new trial.

## VI. *Attorney Fees*

Rio Vista Association contends the court erred in awarding the City attorney fees under Civil Code section 1717.

## A. *Background*

After the court granted its summary judgment motion, the City moved for prevailing party attorney fees based on a provision contained in the CC&R II.[6] Relying on Civil Code section 1717, the City argued it was entitled to contractual fees under this provision because Rio Vista Association's complaint sought to limit its contractual

---

[6] This CC&R II provision states: "In the event any suit, action, or other proceeding that is permitted by the terms of this Declaration, is instituted to enforce any of the provisions contained in this Declaration, the party prevailing in such suit, action, or proceeding, shall be entitled to recover from the other party thereto as part of the judgment, its actual attorneys' fees and costs of such suit, action or proceeding." The CC&R II also contains a second fees provision: "Neither the Declaration . . . nor any other means or method shall . . . operate, directly or indirectly, to prevent or preclude any other Owners or any person, individual, or entity from complying with all applicable provisions of the Tentative Map, the Final Map and other City ordinances, rules, policies or regulations. [¶] . . . [¶] . . . None of the terms of the Declaration shall be deleted or modified without the consent of the City Attorney. Further, the City shall have the right but not the obligation to enforce any of the above provisions and that in the event the City pursues legal action to enforce any of its rights, the City shall be entitled to reasonable attorneys' fees."

28

obligations under the CC&R's and/or to invalidate the City's approval condition that was incorporated into the CC&R's.

The City submitted the supporting declaration of Annie Perrigo, the City attorney with primary responsibility for representing the City in the matter. Perrigo stated the City incurred $39,015 in attorney fees, consisting primarily of Perrigo's time (171.8 hours) at an hourly rate of $225. Perrigo also provided a detailed breakdown of the litigation tasks performed and the time spent for each task.

In opposition, Rio Vista Association argued: (1) Civil Code section 1717 is inapplicable because Rio Vista Association did not bring its claims " '*on the contract*' "; (2) Perrigo's declaration did not include sufficient information to support the amount of attorney fees requested; and (3) Rio Vista Association is a nonprofit entity and cannot afford to pay an attorney fees award. In support of the third argument, Rio Vista Association submitted its attorney's declaration, stating "[t]he impact of any award of fees would be devastating to this small community's landscape association."

After considering the parties' submissions, the court granted the motion and awarded the City $39,690 in attorney fees. The court found Civil Code section 1717 applied because "[t]he governing CC&Rs . . . authorize an award of fees to the prevailing party where an action is filed 'to enforce any of the provisions contained in the Declaration' " and "the main thrust of this litigation was the governing CC&Rs . . . ." The court also concluded that Perrigo's declaration and time/task documentation was sufficient to allow the court to determine the amount of fees reasonably incurred in the matter, and rejected Rio Vista Association's argument that minor redactions in the

supporting information precluded the court from determining the reasonable fees. The court further rejected Rio Vista Association's argument that the court should take into consideration its financial condition in ruling on the motion.

B. *Analysis*

Civil Code section 1717 governs contractual prevailing-party attorney fees and applies to "any action *on a contract*." (Civ. Code, § 1717, subd. (a), italics added.) "California courts liberally construe the term ' " 'on a contract' " ' . . . As long as the action '*involve*[*s*]' a contract it is ' "on [the] contract" ' within the meaning of [Civil Code] section 1717." (*Dell Merk, Inc. v. Franzia* (2005) 132 Cal.App.4th 443, 455; see *Hastings v. Matlock* (1985) 171 Cal.App.3d 826, 841.) An action seeking a declaration of parties' rights under contractual language is "on the contract" under this code section. (See *City and County of San Francisco v. Union Pacific R.R. Co.* (1996) 50 Cal.App.4th 987, 1000.)

Nonsignatory defendants, who are sued on a contract as if they were parties to it, may be entitled to attorney fees upon prevailing in the action. (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.) Civil Code "section 1717 . . . provide[s] a reciprocal remedy for a nonsignatory defendant . . . when a plaintiff would clearly be entitled to attorney's fees should he prevail in enforcing the contractual obligation against the defendant." (*Ibid*.)

In this case, the CC&R II specifically provided that the City had the "right" to enforce the CC&R rules requiring Rio Vista Association to comply with applicable provisions of the tentative and final maps, including Resolution 94-P25. This same

30

clause stated that "in the event the City pursues legal action to enforce any of its rights, the City shall be entitled to reasonable attorneys' fees." The CC&R II also contained a more general attorney fees provision stating that: "In the event any suit, action, or other proceeding that is permitted by the terms of this Declaration, is instituted to enforce any of the provisions contained in this Declaration, the party prevailing . . . shall be entitled to recover from the other party . . . ."

Under these provisions, the City was entitled to prevailing party attorney fees. Although the City was not a signatory to the CC&R II document, the City had a status akin to a third party beneficiary. The CC&R II provisions required Rio Vista Association to comply with the City's development conditions and expressly stated that this obligation was specifically enforceable by the City. In its complaint, Rio Vista Association sought an order interpreting the CC&R II document in such a way that it did not have the duty or authority to comply with the City's conditions set forth in Resolution 94-P25. This action was clearly "on the contract" and if Rio Vista Association had prevailed it would have been entitled to attorney fees against the City.

We also find unavailing Rio Vista Association's challenge to the City's supporting documentation. The City attorney with primary responsibility for the litigation provided her supporting declaration and a detailed breakdown of the tasks performed. The fact that this attorney did not include additional details such as her age and educational background did not render the supporting information materially incomplete. Additionally, the minor redactions in the detailed billing information does not show the

31

court abused its discretion in concluding the requested fees were reasonable and necessary.

## VII. *Additional Contentions*

In its opening brief, Rio Vista Association asserts numerous points within each of its main contentions. We have reviewed each of those assertions and find them to be baseless. There is no need to discuss each of these subpoints in this opinion. (See *Linhart v. Nelson* (1976) 18 Cal.3d 641, 645 ["Having examined [appellants'] other contentions, we find them of insufficient merit to warrant discussion."].)

Rio Vista Association additionally raises several contentions for the first time in its reply brief. We decline to consider these assertions for "[o]bvious reasons of fairness." (*Garcia v. McCutchen* (1997) 16 Cal.4th 469, 482, fn. 10; accord *Holmes v. Petrovich Development Co., LLC* (2011) 191 Cal.App.4th 1047, 1074.) Arguments raised for the first time in a reply brief are forfeited. (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1754, fn. 1.)

## DISPOSITION

Judgment affirmed. Appellant to bear respondent's costs on appeal.


                                                                    HALLER, J.

WE CONCUR:


McCONNELL, P. J.


HUFFMAN, J.

32